[No. 3950.   Decided June 24, 1902.]

ROSWELL K. BROWN, *Respondent*, v. UNION SAVINGS AND LOAN ASSOCIATION, *Appellant*.

PLEDGE OF BUILDING AND LOAN ASSOCIATION SHARES — CANCELLATION OF CERTIFICATE — ACTION BY PLEDGEE.

A pledgee of shares of stock in a building and loan association, which have been called in, paid off, and canceled without notice to him or a demand for the surrender of the certificate held by him in pledge, has a right of action against the association for the damages suffered by him in consequence of the destruction or conversion of such shares.

SAME — NOTICE OF PLEDGE.

A corporation which pays off shares of stock to the holder thereof as shown on its books, without the return of the certificate issued to him, does so at its peril, since, under Bal. Code, § 4264, which provides that any stockholder may pledge his stock by a delivery of the certificate, but may, nevertheless, represent the same at all meetings and vote as a stockholder, it is unnecessary for the pledgee to notify the corporation of the pledge nor contemplated by the statute that the pledge be shown on the corporate books by a transfer of the stock.

SAME — MEASURE OF DAMAGES.

Where a building and loan association has a defense against the original holder of a certificate of stock issued by it, a pledgee of such certificate, who has a right of action for damages against the corporation for the conversion or destruction of such shares, is entitled to recover only the amount due him from the pledgor, with interest accrued and accruing thereon at the contract rate; and his measure of recovery would not be the full value of the stock at the date of conversion, unless his actual damage was equal thereto.

Appeal from Superior Court, Jefferson County.— Hon. JAMES G. McCLINTON, Judge. Reversed.

*W. S. Hufford* and *C. W. Miller*, for appellant.

*Trumbull & Trumbull*, for respondent.

42—28 WASH.

The opinion of the court was delivered by

FULLERTON, J.—The appellant is a building and loan association duly incorporated under the laws of the state of Oregon. On August 15, 1893, the appellant issued to James C. Saunders, president of the Commercial Bank of Port Townsend, a certificate for fifty paid-up shares of its capital stock, of the par value of one hundred dollars each. The shares were the property of the Commercial Bank. In August, 1894, the respondent loaned to the Commercial Bank eight thousand dollars, taking a certificate of deposit therefor, and receiving in pledge as security, with other collaterals, the certificate for the shares of stock above mentioned, indorsed in blank by James C. Saunders as president. By the terms of its charter, the appellant was privileged, as its stock matured, to call in, pay off, and cancel the same upon its books, and in September, 1894, it sought to exercise this privilege with reference to the stock represented by this certificate. The board of directors of the appellant ordered that the same be called in, paid off, and canceled, pursuant to which its managing officers paid the same to the Commercial Bank, which appeared at that time upon its books to be the owner of the same, without exacting a return of the certificate. Whether it had notice that the certificate had been assigned to the respondent does not clearly appear from the record, nor does it appear whether it made inquiry to ascertain whether the Commercial Bank still held it. From the whole of the record, however, it can be inferred that it neither knew the one nor did the other, but that it relied upon certain provisions of its by-laws relating to transfers of its stock to protect it against the interests of persons not appearing upon its books to be the owners, or having interests in its outstanding stock. In September, 1896,

two thousand dollars was paid by the bank to the respondent upon his loan, and a new certificate of deposit issued to him for the reduced amount, and he was permitted to hold all of the securities he then held, including the stock certificate, as security for the payment of this new certificate of deposit. He was not informed then that the bank had received the amount due upon the stock represented by the certificate, nor had he any previous knowledge of that fact. Various sums were paid upon the loan between that date and May, 1898, which reduced the amount of the bank's indebtedness to the respondent to less than three thousand dollars. At that time the Commercial Bank closed its doors. Afterwards an agreement was entered into between the bank and its creditors, in which the respondent joined, by the terms of which the creditors agreed to receive from the bank ten per centum of the amount due them, respectively, payable on the 1st day of July, 1898, and the balance in nine equal installments payable every six months thereafter. The bank was able to pay only the first installment falling due under this agreement; afterwards becoming wholly insolvent and unable to further meet any part of its obligations. The respondent exhausted the securities held by him, other than the certificate of stock, and applied the same to the satisfaction of his claim against the bank. The sums received from this source with the installment received under the agreement mentioned, reduced the amount due him from the bank to $2,547. The respondent was told by the bank officials for the first time that the stock represented by the certificate held by him had been called in, paid to the bank, and canceled on the books of the appellant, after the compromise agreement had been signed. He refused then to surrender it up, and, after the final failure of the bank,

presented the certificate to the appellant at its place of business in Portland, Oregon, and demanded that it transfer upon its books to him the stock represented by the certificate, and issue to him in his name a new certificate therefor. This demand was refused by the officers of the appellant on the ground that the stock represented by the certificate had no existence, having been called in, paid off, and canceled in 1894. He thereupon brought this action to recover the value of the stock, alleging it to have been worth, at the time of its cancellation, its par value, and demanding judgment for that sum, with interest. Issue was taken upon the complaint, and trial had before the court (a jury trial being waived by the parties), resulting in a judgment in favor of the respondent for the par value of the stock, with interest from July 1, 1898, at ten per centum per annum.

The appellant first contends that the respondent, having received the stock in pledge as security for a debt owing him, cannot maintain an action of damages against the corporation issuing the stock before its conversion or destruction without first acquiring title to the stock in some one of the modes, provided by law, by which a pledgee may acquire title to the thing he holds in pledge; that shares of stock are not negotiable instruments, nor to be likened to negotiable instruments, which become due and payable at a time certain, but are chattels pure and simple, and are to be likened to other chattels which may pass by symbolical delivery; that the remedy of a holder in pledge of such chattels, when the debt owing him becomes due, is to sell the same, either by judicial sale after foreclosure, or at public sale without foreclosure, after giving reasonable notice to the pledgor to redeem; and

that it is only after some such sale, at which the pledgee becomes the purchaser, can he maintain such an action. However forceful this reasoning might be when applied to shares of stock issued by the ordinary corporation, whose stock has a life coexistent with the life of the corporation issuing it, we cannot think it can be held to apply to shares of stock of a building and loan association, which have been called in, paid off, and canceled. By this process, the stock is destroyed. It no longer has any existence. There is nothing remaining which can be sold or purchased, nor is there any stock which can be transferred upon the books of the corporation. Hence, there is nothing which the holder of the certificate can sell; and the process of attempting to sell it would be as fruitless as the attempt to sell a corporeal chattel after it had been destroyed. But, because the pledgee cannot sell the pledged property by judicial or other sale, he is not without remedy. As the pledge of corporate shares of stock is to be likened to the pledge of ordinary chattels, the pledgee has the same remedy against one who wrongfully destroys them to his injury that he has against one who wrongfully destroys any chattel he holds in pledge. He may maintain an action against the wrongdoer for the damages suffered by him caused by such wrongful destruction. If he is liable to account to his pledgor for the value of the property destroyed, he may recover its full value, and, if he is not so liable, he may recover the actual damages suffered by him up to the value of the chattel destroyed. So here, if the destruction of these chattels by the corporation was without right as against the respondent, an action will lie against it, in his favor, for the damages occasioned him thereby.

The appellant, however, contends that it is not liable as a wrongdoer under the facts shown. It argues that

inasmuch as it had no notice that the stock was held in pledge by the respondent, and inasmuch as its by-laws and the statute provide that no transfer of its stock shall be valid except between the parties thereto, until the same shall have been entered upon the books of the company, so as to show the names of the parties, by and to whom transferred, the numbers and designation of the shares, and the date of the transfer, it was authorized to treat the person appearing upon its books to be the owner as the owner, and when it, without notice of the claim of any one else, paid the apparent owner the value of the shares, and canceled the same, it relieved itself from further liability. But the appellant was bound to take notice of and to read this section in connection with the further provision of the statute, viz., that any stockholder may pledge his stock by a delivery of the certificate or other evidence of his interest, and may, nevertheless, represent the same at all meetings, and vote as a stockholder. Bal. Code, § 4264. These statutes neither contemplate nor require that the holder of stock so pledged shall notify the corporation tha' he has received it in pledge. Nor do they contemplate tha. there shall be a transfer of the stock, on the books of the corporation from the pledgor to the pledgee. On the contrary, the contemplation is directly the opposite. As the statute recognizes the pledgor as the owner and the only person authorized to represent the stock at the stockholders' meetings, and does not provide for a conditional transfer, it is only absolute transfers that must be so entered. Nor is notice of the pledge necessary to the protection of the company. It need not pay off or cancel the stock without a return of the stock certificate. So far, therefore, from being protected by its by-laws and the statute first mentioned, against a can-

cellation of the stock without a return or production of the stock certificate by the person claiming the right to such payment, it was gross negligence on its part to make the cancellation, and it is liable for any damages suffered by the pledgee by reason of such cancellation.

The next question is, what is the measure of the appellant's recovery under the facts shown? The trial court held, as we have said, that he was entitled to recover the full value of the stock, with interest at the rate the principal debt bore from July 1, 1898, up to the date of the judgment. In this, we think the trial judge committed error. The respondent's actual damage was the amount of the principal of his claim against his debtor remaining unpaid at the time this action was brought, with the interest accrued and accruing thereon at the contract rate, and this, we think, is all that the respondent was entitled to recover against the appellant. Mr. Freeman, in his note to the case of *Griggs v. Day*, 32 Am. St. Rep. 714, states the rule to be that "where the maker has a defense as against the original payee of a negotiable instrument transferred as collateral security, the holder is in no event entitled to enforce such instrument, except to the amount of the debt which it was pledged to secure," and, by analogy, the rule will apply to the case before us. Here, the appellant had a defense against any action instituted upon the certificate by the Commercial Bank, and the respondent is under no obligation to account to it for the surplus over and above his debt.

We have not felt called upon to discuss the many objections urged by the appellant against the trial of the cause by the lower court upon its merits, nor the objections of the respondent to a like hearing in this court. These objections raise questions of practice and procedure, all of

which have been either directly or by analogy determined by this court contrary to the contentions of the party making them; and a further enunciation of the principles upon which the decisions rest would be of no practical value.

For the error in the amount of the judgment entered, the judgment is reversed, and the cause remanded, with instructions to enter a judgment in favor of the respondent for the sum of twenty-five hundred and forty-seven dollars, with interest thereon from the 1st day of July, 1898, at ten per centum per annum. The appellant will recover its costs on this appeal.

REAVIS, C. J., and HADLEY, ANDERS, DUNBAR and MOUNT, JJ., concur.