260

NORTH AVENUE STATE BANK, Respondent, vs. EXCEL-
SIOR MUTUAL BUILDING AND LOAN ASSOCIATION, Ap-
pellant.

*December 9, 1931—March 8, 1932.*

*Max J. Leutermann* of Milwaukee, for the appellant.

For the respondent there were briefs by *Poss, Toelle & Schuler* of Milwaukee, and oral argument by *H. W. Schuler*.

The following opinion was filed January 12, 1932:

FOWLER, J. The demurrer is on the ground of insufficiency of facts pleaded. The complaint states that the plaintiff corporation, hereinafter called the bank, loaned to one Erz, treasurer of the defendant, hereinafter called the association, a sum of money in excess of the value of a matured certificate for ten shares of the stock of the association held by him and took the certificate assigned in blank as collateral. On maturity of the certificate the bank demanded payment of its value, which was less than the amount of its loan to Erz. The association refused payment. The complaint also alleges notice of the pledge of stock to the association prior to the commencement of the suit.

If this were all there was to the complaint, the complaint would be sufficient, providing building and loan stock may be lawfully pledged as security for a loan. Appellant claims that such stock cannot lawfully be so pledged. *A priori* it may be, under the general rule that all manner of personal property may be so pledged. 21 Ruling Case Law, p. 634. We would have to take judicial notice of any statute prohibiting such pledging, but no statute is called to our attention which expressly prohibits it. Sec. 215.15, Stats., is cited, but it does not say that such stock may not be so pledged. Sec. 215.26 declares what articles or by-laws building and loan associations *must* adopt, among which is one prescribing the manner and condition of transfer of shares and one prescribing the terms and conditions upon which loans may be obtained, paid, and canceled, which manifestly applies to loans by the association. It does not inferentially follow from either of these provisions that a

holder of shares may not secure loans elsewhere and pledge his shares as collateral. Sec. 215.13 says respecting matured stock: "The holders of unpledged shares shall be paid," etc., without specific reference to stock pledged to the association. Although sec. 215.15 requires that all loans to the members secured by mortgage shall be "accompanied by a pledge of the shares borrowed upon," we consider that the word "unpledged" used in sec. 215.13 should not be held to refer only to stock pledged to the association and are of opinion that the building and loan shares may be pledged to others than the association. That such stock may be pledged is directly held in *Campbell v. Perth Amboy Mut. L., H. & B. Asso.* 76 N. J. Eq. 347, 74 Atl. 144; *Brown v. Union S. & L. Asso.* 28 Wash. 657, 69 Pac. 383; *German Union Bldg. & Sav. Fund Asso. v. Sendmeyer,* 50 Pa. St. 67.

It is also contended that a corporation cannot become an owner of building and loan stock because sec. 215.20 provides that only natural persons may become "members" of a building and loan association. The most that can be claimed under this section is that a corporation cannot become a member of an association and vote shares held by it at a meeting of the association. It does not expressly, and we consider that it does not inferentially, bar corporations from holding shares as collateral security. Although banks are not authorized to deal in stocks, they may take them as collateral security. *Corn Exch. Nat. Bank v. Kaiser,* 160 Wis. 199, 151 N. W. 259. With greater reason may they take as collateral building and loan shares which are merely promises to pay money.

The complaint therefore states a cause of action unless the pleader has defeated the effect of the allegations first stated by pleading other facts. The other facts alleged are in brief that Erz got the association to loan him money on the pledged stock, without delivering the certificate to the company to hold pending payment of the loan as the by-laws

of the association require, and that on maturity of the stock the association paid him the matured value less the amount of his loan, without requiring return of the stock as the by-laws require. Payment ordinarily defeats recovery, but to constitute payment of an assigned chose in action not negotiable good as against the assignee the payment must be made without notice of the assignment. The complaint does not allege that the payment here involved was so made. It was held in effect in *Webber v. Roddis,* 22 Wis. 61, that a complaint based on an assigned contract for delivery of goods on a specified date to be sufficient must. allege either that the goods were not delivered to the obligee named in the contract prior to the date fixed for delivery or, if delivered to the obligee on or after that date, that the defendant had notice of the assignment and made the delivery after receiving such notice. This case has never been overruled. Applying the rule of it to a complaint based upon an assigned chose in action for payment of money, if the complaint alleges payment to be sufficient it must also allege that the payment was made with notice of the assignment. The certificate here sued upon is such a chose in action.

Counsel for respondent does not dispute the general rule that payment of an assigned chose in action without notice of the assignment discharges the obligor as to the assignee, but contends that under the provisions of the by-laws set out in the complaint providing when loans are made by members they shall deposit their shares with the association and that on payment shares shall revert to the association and be canceled, the general rule should not be applied to building and loan shares assigned as collateral. It is urged that these provisions if followed would protect assignees of stock against payment to the original holder. So they would. But the provisions are not made for the benefit of the public. They are made for the benefit of the member and the association. The association may waive a provision

for its benefit if it wishes, and owes no duty to the public not to waive it. One taking shares as collateral may easily protect himself against payment to the member by giving notice of his assignment and is under the same obligation to protect himself as is the assignee of any other chose in action. The matured shares are only promises to pay money, and there would seem to be no more reason to exempt a pledgee from duty to give notice of his assignment than to exempt a pledgee of a promissory note not negotiable or overdue from giving notice. To the precise point whether payment of building and loan shares pledged as collateral paid by the association under the circumstances here involved exempts the association from payment to the pledgee only two cases are called to our attention. *Campbell v. Perth Amboy Mut. L., H. & B. Asso., supra,* holds that the pledgee cannot recover. *Brown v. Union S. & L. Asso., supra,* holds that he can, but we cannot accept the ground on which the Washington court bases its conclusion, which is in brief that by entering cancellation of the paid shares upon its books the association destroys the pledged shares and is liable in tort for that destruction for the same reason that any one else is liable for destruction of property that another owns or has an interest in. As the association neither destroys the certificate in a physical sense nor owes a duty to the holder of it to protect his interest in it, we are unable to perceive that it has committed any wrong against the holder.

The complaint is considered insufficient for absence of an allegation that the payment alleged was made after notice of the assignment of the certificate to the plaintiff.

*By the Court.*—The order of the circuit court is reversed, with directions to sustain the demurrer.

A motion for a rehearing was denied, with $25 costs, on March 8, 1932.