# GREAT WESTERN TELEGRAPH COMPANY *v.* PURDY.

### ERROR TO THE SUPREME COURT OF THE STATE OF IOWA.

No. 105. Argued December 6, 9, 1895. — Decided April 13, 1896.

Upon a bill in equity by subscribers for shares in a corporation to compel it to issue shares to them, and to set aside as fraudulent a contract by which it had agreed to transfer all its shares to another person, a decree was entered, setting aside that contract, and ordering shares to be issued to the plaintiffs, and a new board of directors to be chosen. Upon a bill by other stockholders, afterwards filed by leave of court in the same cause, and entitled a supplemental bill, alleging fraud and mismanagement of the new officers and insolvency of the company, and praying for the appointment of a receiver, the court, without notice to the plaintiffs in the original bill, appointed a receiver, and made an order for a call or assessment upon all stockholders of the company. *Held,* that this order, although conclusive evidence of the necessity of the assessment as against all stockholders, did not prevent a plaintiff in the original bill, when sued by the receiver, in the name of the corporation, for an assessment, from pleading the statute of limitations to his liability upon his subscription.

In an action brought in a state court, by a corporation against a subscriber for shares, to recover an assessment thereon under an order of assessment made by a court of another State upon all the stockholders, in a proceeding of which he had no notice, a judgment of the highest court of the State for the defendant, upon the ground that, by its construction of a general statute of limitations of the State, the cause of action accrued against him at the date of his contract of subscription, and not at the date of the order of assessment, involves no Federal question, and is not reviewable by this court on writ of error.

THIS was an action brought August 30, 1888, in the district court of Des Moines county in the State of Iowa, by the

Great Western Telegraph Company, a corporation of Illinois, by its receiver, Elias R. Bowen, against Hiram Purdy, a citizen of Iowa, to recover the sum of $437.50, with interest from July 10, 1886, alleged to be due from him to the company under his subscription to its stock, and under a decree of the circuit court of Cook County in the State of Illinois of that date, which ordered an assessment upon the stockholders of the company, and which was alleged to have been made in a suit to which he was a party, and to be binding upon him. Trial by jury was waived, and the case tried by the court. The material facts appeared by the record to have been as follows:

The company was incorporated under the laws of the State of Illinois in 1867. On February 16, 1869, Purdy subscribed for fifty shares of the par value of $25 each, by signing and delivering to the company's agent at Burlington, in the State of Iowa, the following writing:

"Capital, $3,000,000; shares, $25; assessments not to exceed $10 on a share.

"Subscription List for the Capital Stock of the Great Western Telegraph Company.

"We, the subscribers hereunto, for value received, severally, but not jointly, agree to take the number of shares in the capital stock of the Great Western Telegraph Company placed opposite our respective names, and pay for the same in instalments, to wit, five per cent on amount paid in, and the balance as the directors from time to time may order; in consid ration thereof the Great Western Telegraph Company agree that when forty per cent of the par value of the shares shall have been paid under such orders, and the instalment receipts therefor surrendered to the company, the number of shares severally subscribed by the undersigned shall be issued to them as full paid stock by the said company.

"T. C. Snow is appointed agent to solicit stock and receive only the first instalment of five per cent (fifty cents on a share) at the time of subscription.

"J. Snow, Secretary.".

Upon this subscription Purdy paid $275, before November, 1869.

On November 19, 1869, Jeremiah Terwilliger and others, including Purdy, subscribers to stock in the company, and who had paid money on their subscriptions, filed a bill in equity in the circuit court of Cook county, Illinois, against the company, its president and secretary, and Selah Reeve, to compel the issue of certificates of stock to the plaintiffs and other subscribers, and to set aside as fraudulent a contract between the company and Reeve, by which Reeve agreed to build its telegraph lines, and the company agreed to transfer to him its entire capital stock. On November 16, 1872, a decree was entered in that suit, setting aside the contract between Reeve and the company; ordering an accounting between them; ordering the company to issue to the subscribers certificates for as many shares as they were entitled to by the money paid; directing the president and secretary to call a meeting of the company to choose a new board of directors; reserving leave to the plaintiffs at any time to apply for such further order or decree as should be necessary to carry out this decree or be necessary in the cause; and ordering the individual defendants to pay the costs of the suit.

On January 7, 1873, those costs were paid; and on January 29, 1873, a meeting of the company was held and a new board of directors chosen, and a certificate for twenty-seven and a half shares was issued to Purdy.

The following proceedings were afterwards had in that cause: On September 19, 1874, other stockholders, by leave of the court, intervened, and filed a "supplemental bill" against the company and its officers, alleging mismanagement and fraud on the part of the new officers, and the insolvency of the company, and praying for the appointment of a receiver. On October 7, 1874, upon the motion of the plaintiffs in the supplemental bill, and after notice to and with the consent of all the parties to that bill, the court appointed Oliver H. Horton receiver of the property of the company. Bowen was afterwards appointed receiver in place of Horton; and upon his petition, and upon the report of a

master appointed to inquire into the amount of the debts and assets of the company, and the percentage of the par value of the shares necessary to be paid by the stockholders to satisfy those debts, the court, on July 10, 1886, adjudged that the company was insolvent, and had no means for paying its debts, except the sums remaining unpaid upon subscriptions for stock, and that there were more than two thousand stockholders widely scattered through twelve States and Territories, and it was impracticable to make all of them parties to the suit; and entered an order and decree "that a call or assessment be, and the same is hereby, made upon the stock and stockholders of the said company, (excepting those who have paid in full,) their legal heirs, representatives and assigns, of thirty-five per centum of the par value of the shares of said stock subscribed for or held by them, being eight dollars and seventy-five cents on each and every share thereof; and that the stockholders of said company and each and every one of them (excepting those who have paid twenty-five dollars on each and every share subscribed for or held by them) and their heirs, legal representatives and assigns be, and they hereby are, severally ordered and required to pay to the receiver of said company, the said Elias R. Bowen, the several amounts by this decree called for and assessed and required to be paid, namely, eight dollars and seventy-five cents on each and every share subscribed for or held by them respectively, and that the same be paid upon the demand of said receiver or his agent;" and "that said receiver shall at once proceed to collect the said sums so ordered to be paid by this decree, and shall make all necessary demands for such payments, shall employ such assistance and counsel, take such action, and institute such suits and proceedings, in the name of the said company, and in such jurisdictions as he shall be advised or deem expedient and proper, and for the purpose of enforcing the payment of the sums hereby ordered paid."

On August 29, 1888, the receiver accordingly demanded of Purdy the payment of the sum of $8.75 upon each share of his stock, amounting to $437.50; and on the next day brought this action.

The inferior court of Iowa, in which this action was brought, gave judgment for the defendant. The plaintiff appealed to the Supreme Court of Iowa, which affirmed the judgment, upon the ground that the action was barred by the statute of limitations. 83 Iowa, 430.

The plaintiff sued out this writ of error; and assigned for error that the Supreme Court of Iowa did not give full faith and credit to the decree of assessment of the court of Illinois, as required by art. 4, sect. 1, of the Constitution, and section 709 of the Revised Statutes of the United States.

*Mr. Thomas J. Sutherland,* (with whom was *Mr. William P. Black* on the brief,) for plaintiff in error.

I. The question of full faith and credit was fairly set out, and involved in the pleadings and decision of the Supreme Court, as well as in the district court of Iowa. *Chicago Life Ins. Co.* v. *Needles,* 113 U. S. 574; *Powell* v. *Brunswick County,* 150 U. S. 433; *Sayward* v. *Denny,* 158 U. S. 180; *Maxwell* v. *Newbold,* 18 How. 516; *Murdock* v. *Memphis,* 20 Wall. 590; *Bolling* v. *Lersner,* 91 U. S. 595; *Crowell* v. *Randell,* 10 Pet. 368; *Texas & Pacific Railway* v. *Southern Pacific Co.,* 137 U. S. 48; *Kaukauna Co.* v. *Green Bay & Canal Co.,* 142 U. S. 254.

II. The Federal question was erroneously decided, and the decision of the Supreme Court of Iowa rests upon no ground broad enough to sustain its judgment independent of its decision of the Federal question.

There is but really *one* point in the whole opinion. The Iowa court gave judgment against the plaintiff, and applied the statute of limitations of Iowa, of ten years, as a bar to the plaintiff's action, because the board of directors — the defendant's own agents — had not made a valid call or commenced an action against the defendant, for ten years before this action was begun. This is the sole ground of the decision, and the court could only have arrived at such a decision by holding that the decree of assessment of the Illinois court coupled with the demand of the receiver for payment, made

in pursuance of the decree, could not, and did not, create a cause of action. It was clearly only colorable, and no proper ground on which to defeat the plaintiff and ignore the Federal question, or decide it adversely to the claim of the plaintiff.

The decree of the Illinois court which had jurisdiction of the subject-matter and of the parties, was, and is, conclusive upon the merits of the controversies, determined by that judgment between the parties and their privies, in every court in the United States, and can not be collaterally questioned. *Christmas* v. *Russell*, 5 Wall. 290; *Maxwell* v. *Stewart*, 22 Wall. 77; *Anderson* v. *Anderson*, 8 Ohio, 108; *Mason* v. *Messenger*, 17 Iowa, 261; *Smith* v. *Smith*, 22 Iowa, 516; *Burlington & Missouri Railway* v. *Hall*, 37 Iowa, 620.

*Mr. S. L. Glasgow* for defendant in error.

MR. JUSTICE GRAY, after stating the case, delivered the opinion of the court.

By art. 4, sect. 1, of the Constitution of the United States, "Full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State. And Congress may, by general laws, prescribe the manner in which such acts, records and proceedings shall be proved and the effect thereof." In the exercise of the power so conferred, Congress, besides providing the manner in which the records and judicial proceedings of the courts of any State shall be authenticated, has enacted that "the said records and judicial proceedings, so authenticated, shall have such faith and credit given to them in every court within the United States, that they have by law or usage in the courts of the State from which they were taken." Act of May 26, 1790, c. 11; 1 Stat. 122; Rev. Stat. § 905.

The plaintiff relied on the order of assessment, made by a court of the State of Illinois, as a judgment of that court, entitled to the effect of being conclusive evidence of the plaintiff's right to maintain this action against the defendant. The Supreme Court of the State of Iowa denied it that effect.

The question whether that court thereby declined to give full faith and credit to a judicial proceeding of a court of another State, as required by the Constitution and laws of the United States, was necessarily involved in the decision.

This court therefore has jurisdiction of the case, but must judge for itself of the true nature and effect of the order relied on. *Armstrong* v. *Treasurer of Athens County*, 16 Pet. 281, 285; *Texas & Pacific Railway* v. *Southern Pacific Co.*, 137 U. S. 48; *Grover & Baker Co.* v. *Radcliffe*, 137 U. S. 287; *Carpenter* v. *Strange*, 141 U. S. 87; *Huntington* v. *Attrill*, 146 U. S. 657, 666, 683–686, and cases cited.

By the original contract between the parties, made in the State of Iowa on February 16, 1869, Purdy, the present defendant, agreed to take fifty shares, of the par value of $25, in the plaintiff company, and to pay five per cent (which he did) and "the balance as the directors from time to time may order;" and the company agreed to issue the shares to him as soon as forty per cent had been paid.

On November 19, 1869, Purdy and other subscribers for shares filed in a court of the State of Illinois a bill in equity to compel the company to issue shares to them, and to set aside as fraudulent a contract by which the company had agreed to transfer all its capital stock to one Reeve; and upon that bill, on November 16, 1872, obtained a decree, setting aside that contract, and ordering shares to be issued to the subscribers as prayed for, and a new board of directors to be chosen. By that decree, all the objects of the suit were accomplished, so far as Purdy was concerned; and he does not appear to have had any notice of, or part in, any further proceedings. That bill did not ask for the appointment of a receiver, or for any order of assessment upon stockholders.

The subsequent proceeding, begun September 19, 1874, alleging mismanagement and fraud of the new officers and the insolvency of the company, was by other stockholders, and although entitled a "supplemental bill," and permitted by the court to be filed in the former cause, was a distinct proceeding, in which Purdy had and took no interest. The orders of the court upon this proceeding, appointing on October

7, 1874, a receiver, and on July 10, 1886, making a "call or assessment" upon the stockholders of the company, were entered without any notice to him, or consent on his part. He was not personally a party to this proceeding, nor named therein. The receiver was appointed almost two years, and the assessment ordered more than thirteen years, after Purdy had ceased to have any connection with the litigation.

There can be no doubt that, as heretofore declared by this court, "after a decree disposing of the issues and in accordance with the prayer of a bill has been made, it is not competent for one of the parties, without a service of new process, or appearance, to institute further proceedings on new issues and for new objects, although connected with the subject-matter of the original litigation, by merely giving the new proceedings the title of the original cause. If his bill begins a new litigation, the parties against whom he seeks relief are entitled to notice thereof, and without it they will not be bound." *Smith* v. *Woolfolk*, 115 U. S. 143, 148.

The question therefore is of the effect, as against Purdy, of the order for an assessment, made by the Illinois court in a proceeding to which the corporation was a party, but to which he personally was not.

The order of that court was in effect, as it was in terms, simply a "call or assessment" upon all stockholders who had not paid for their shares in full. It was such as the directors might have made before the appointment of a receiver; and in making it the court, having by that appointment assumed the charge of the assets and affairs of the corporation, took the place and exercised the office of the directors. *Scovill* v. *Thayer*, 105 U. S. 143, 155; *Hawkins* v. *Glenn*, 131 U. S. 319, 329; *Lamb* v. *Lamb*, 6 Bissell, 420, 424; *Glenn* v. *Saxton*, 68 California, 353; *Great Western Tel. Co.* v. *Gray*, 122 Illinois, 630, 636, 640; *Great Western Tel. Co.* v. *Loewenthal*, 154 Illinois, 261.

The order of assessment, whether made by the directors as provided in the contract of subscription, or by the court as the successor in this respect of the directors, was doubtless, unless directly attacked and set aside by appropriate judicial

proceedings, conclusive evidence of the necessity for making such an assessment, and to that extent bound every stockholder, without personal notice to him. *Hawkins* v. *Glenn*, 131 U. S. 319; *Glenn* v. *Liggett*, 135 U. S. 533; *Glenn* v. *Marbury*, 145 U. S. 499.

But the order was not, and did not purport to be, a judgment against any one. It did not undertake to determine the question whether any particular stockholder was or was not liable in any amount. It did not merge the cause of action of the company against any stockholder on his contract of subscription, nor deprive him of the right, when sued for an assessment, to rely on any defence which he might have to an action upon that contract.

In this action, therefore, brought by the receiver, in the name of the company, as authorized by the order of assessment, to recover the sum supposed to be due from the defendant, he had the right to plead a release, or payment, or the statute of limitations, or any other defence, going to show that he was not liable upon his contract of subscription.

In each of the three cases last cited above, the defence of the statute of limitations was entertained and passed upon. *Hawkins* v. *Glenn*, 131 U. S. 332; *Glenn* v. *Liggett*, 135 U. S. 547; *Glenn* v. *Marbury*, 145 U. S. 506.

The whole effect of the order of assessment being to fix the amount which any stockholder liable under his contract of subscription should pay, and to authorize the receiver to bring suits against stockholders for the same, but not to determine whether the present defendant, or any other particular stockholder was liable for anything, the Iowa court, by sustaining the defence of the statute of limitations, did not deny to the judicial proceeding of Illinois the full faith and credit to which it was entitled.

The statute of limitations of the State of Iowa provides that "the following actions may be brought within the times herein limited respectively after their causes accrue, and not afterwards, except when otherwise specially declared."

"4. Those founded on unwritten contracts, those brought for injuries to property, or for relief on the ground of fraud

in cases heretofore solely cognizable in a court of chancery, and all other actions not otherwise provided for in this respect, within five years.

"5. Those founded on written contracts, on judgments of any courts, except those courts provided for in the next subdivision, and those brought for the recovery of real property, within ten years.

"6. Those founded on a judgment of a court of record whether of this or of any other of the United States, or of the Federal courts of the United States, within twenty years." Iowa Code of 1873, § 2529.

This action was not brought on a judgment, for there had been no judgment. But it was brought on the defendant's written contract of subscription, and was therefore, by the terms of the Iowa statute, barred in ten years after the cause of action accrued. The action was brought more than ten years after the contract, but within ten years after the order of assessment.

In many jurisdictions, the cause of action, within the meaning of a statute of limitations, would be held to have accrued at the time of the order for an assessment, and not before. It has been so held by the Supreme Court of the State of Illinois, where this company was incorporated and the order of assessment made, as well as by this court in cases coming up from Circuit Courts of the United States and unaffected by decisions of the highest court of the State in which those courts were held. *Great Western Tel. Co.* v. *Gray; Hawkins* v. *Glenn; Glenn* v. *Liggett;* and *Glenn* v. *Marbury,* above cited.

But the Supreme Court of Iowa in the present case held that, as it rested with the directors of the corporation to make that order, the delay in making it could not suspend the operation of the statute of limitations; and that the case was within the rule, established by a series of decisions of that court, that when a plaintiff could at any time, by making a demand, or giving a notice, acquire a right to recover against the defendant, the statute of limitations began to run when he might have done so. *Great Western Tel. Co.* v. *Purdy,* 83 Iowa, 430, 433, and cases cited.

The limitation of actions is governed by the *lex fori*, and is controlled by the legislation of the State in which the action is brought, as construed by the highest court of that State, even if the legislative act or the judicial construction differs from that prevailing in other jurisdictions. *McElmoyle* v. *Cohen*, 13 Pet. 312; *Bauserman* v. *Blunt*, 147 U. S. 647; *Metcalf* v. *Watertown*, 153 U. S. 671; *Balkam* v. *Woodstock Iron Co.*, 154 U. S. 177.

Neither the statutes nor the decisions of the State of Iowa upon this subject have made any discrimination against the citizens, the contracts or the judgments of other States, or against any right asserted under the Constitution or laws of the United States. The case is thus distinguished from *Christmas* v. *Russell*, 5 Wall. 290, cited at the bar.

The question at what time the cause of action accrued in this case, within the meaning of the statute of limitations of Iowa, was not a Federal question, but a local question, upon which the judgment of the highest court of the State cannot be reviewed by this court.

*Judgment affirmed.*