## COVELL v. FOWLER.

(Circuit Court, N. D. Illinois, E. D.    March 6, 1906.)

1. **BANKS AND BANKING—INSOLVENCY—RECEIVERS—CLAIMS—ESTABLISHMENT —SEPARATE SUIT.**

   Where the court in which the settlement of the affairs of an insolvent bank was pending permitted a creditor to establish his claim in a separate suit, and, after the claimant's judgment was reported to the court, it appointed a special receiver to enforce the stockholders' liability to pay the same, it was no defense to a suit against a stockholder that the claim should have been filed with the receiver in the original suit.

2. **SAME—STOCKHOLDERS' LIABILITY—STATUTES—WHAT LAW GOVERNS.**

   While, in a proper case, the liability of a nonresident stockholder of an insolvent bank would be determined by the construction placed on the statute creating such liability by the courts of the domicile of the corporation, the remedy or method of enforcing such liability against him must conform to the procedure of the forum whose aid is invoked.

3. **SAME—SUBSCRIPTION LIABILITY—POWER TO ENFORCE.**

   During the solvency of a bank, the stockholders' subscription liability can only be enforced by assessment made in conformity with the by-laws of the corporation.

4. **SAME—LIABILITY AFTER INSOLVENCY.**

   After a bank has become insolvent and its property has been placed in the hands of a receiver for liquidation, the court in which the receivership proceedings are pending has power to levy assessments against stockholders to enforce their subscription liability.

5. **SAME—SUIT AGAINST STOCKHOLDER.**

   Prior to the levy of an assessment, a stockholder of a bank cannot be pursued by suit to enforce his subscription liability.

6. **SAME—JUDGMENT AGAINST BANK—CONCLUSIVENESS AS AGAINST STOCK-HOLDERS.**

   Where a creditor of a bank obtained a judgment against it for services rendered after the bank was placed in the hands of a receiver, such judgment, though prima facie conclusive on the question of the indebtedness of the corporation did not deprive a court of equity sitting in another state of the right to determine whether the claimant's right of action was such as to bind the stockholders, in a proceeding to enforce a stockholder's subscription and statutory liability.

7. **BANKS AND BANKING—INSOLVENCY—STOCKHOLDERS—POWER TO BIND.**

   Where a bank became insolvent and went into liquidation, its power to bind its stockholders ceased except with reference to transactions implied in the duty of liquidation.

8. **RECEIVERS—SUIT IN FOREIGN COURT—POWER.**

   An ordinary receiver of a bank acting in an equity suit to liquidate the bank's affairs having no other title to the corporation's assets than that derived from the order of the court appointing him, has no power to sue in a foreign jurisdiction to enforce an alleged liability of stockholders.

Frank T. Ranson and Joel W. West (A. A. McClanahan, of counsel), for complainant.

Church, McMurdy & Sherman (William E. Church and Roger Sherman, of counsel), for defendant.

KOHLSAAT, Circuit Judge.    From the allegations of the amended bill filed herein, it appears that the German Savings Bank of Omaha,

being in financial straits was, by vote of its directors, placed in the hands of the state banking board as provided by sections 34 and 35 of chapter 8 of the Compiled Statutes of Nebraska, for 1903, on July 9, 1896; that on July 23, 1896, on petition filed by the Attorney General in the district court of Douglas county, Nebraska, one McCague was appointed receiver under the provisions of the statutes of the state of Nebraska, and duly qualified. Said receiver thereupon took possession of all the property of said bank and reduced the same to money. After applying the same upon the indebtedness of the bank, it was found that there still remained outstanding an indebtedness amounting to about $350,000, and thereupon the court directed the receiver to bring suit to recover from the stockholders, who had paid only 20 per cent. of the amount due for their stock, the remaining 80 per cent. of the value of said stock and also for the added constitutional or double liability of the stockholders. Certain of the stockholders then, to avoid such suits, made voluntarily payments to the receiver, and with the funds so realized, the receiver proceeded to and did satisfy all of the said remaining indebtedness of $350,000 for $115,000, not including the claim of one West for services claimed to have been rendered to said bank after the appointment of the receiver. Afterwards, and while said receivership was still pending, West brought suit for such services in said court and recovered judgment against the bank for the sum of $28,000, which judgment is now in force. By leave of court obtained in said receivership proceeding, he caused execution to be issued on said judgment which was returned nulla bona.

The said West, then, by order of the court in said original cause, secured the appointment of George W. Poynton, as special receiver, to pursue the stockholders upon their said subscription and constitutional liability, and raise a fund to pay West's judgment. The said receiver was authorized to bring proceedings in any jurisdiction where stockholders could be found, and to compromise, compound, adjust and settle with any such nonresident stockholder. Said Poynton died in March, 1905, and George W. Covell, complainant herein, was appointed his successor with like powers by said court in said original proceeding, and he now brings this suit against defendant who was during the period of said receivership, and still is the owner of 200 shares of the stock of the said German Savings Bank, upon some of which certain payments have been made by parties from whom he purchased; that by reason of certain credits, there is now due upon the said judgment of West the sum of $20,000, and interest, which is the only unsatisfied claim against said bank; that defendant is liable for unpaid subscription and upon his said double liability in the sum of $29,000 and that he has paid nothing upon the debts of said bank; that there should further be credited upon West's said judgment the proportionate share of West as the original subscriber for 100 shares of said stock, of the outstanding liability of said bank; that defendant is the only solvent stockholder residing in Illinois.

The bill then prays that an accounting be had of the fair proportion of said judgment which Fowler should pay as such stockholder, not ex-

ceeding the amount that has been exacted from the other solvent stock-holders in Nebraska, and that complainant have a decree therefor. The cause is now before the court on general demurrer to the bill.

In support of the demurrer it is urged by defendant (1) that the judgment having been recovered for services rendered after the bank was placed in the hands of a receiver, is not such an obligation as will bind stockholders; (2) that the claim should have been filed with the receiver in the original suit, and not sued upon in a separate proceeding; (3) that the ascertainment of the pro rata share to be paid by defendant herein, should be had in the home jurisdiction and not here, and that when the amount is determined, the suit should be at law and not in equity; (4) that a foreign receiver cannot bring suit in this jurisdiction.

Considerable time is given in the briefs to a discussion of the order in which the two liabilities of stockholders should be pursued. Both counsel, however, now concede that while they both constitute a trust fund for the payment of corporate debts, the subscription liability should be first exhausted.

Taking up the second ground urged in support of the demurrer first, it does not seem to be well taken. While it would have been the usual and reasonable course to prove up the claim before the original receiver and provide for its collection in the same manner as in the cases of the other claim, yet it was quite within the power of the court to permit it to be established in a separate suit. It was reported to the court in the original suit after judgment and a special receiver was appointed by the court. If that court does not assert its prerogative and insist upon its control of the affairs of the bank through the original case, certainly this court should not attempt to do so, at least on the hearing of a demurrer. Whatever subterfuge, if any, there was in taking that course does not appear on the face of the bill.

With reference to the third point above made, it may be here stated that it is the theory of complainant's counsel that a decree should be entered against the defendant for the balance due upon his subscription liability and for the whole double liability, being a total sum of $29,000; that the total unsatisfied indebtedness should be declared; that the decree should then provide that complainant should exhibit from time to time to this court, the decree of the Nebraska court fixing a pro rata amount that defendant should pay, and thereupon execution should be awarded upon the judgment for the same, and that this should be repeated until the debt is fully paid, thus avoiding a number of suits growing out of the insolvency of other stockholders, or other failure to realize the whole amount of an assessment whereby new assessments might be required.

This seems to be the course of procedure laid down by the Supreme Court of Nebraska in Van Pelt v. Gardner, 54 Neb. 701, 75 N. W. 874. It by no means follows however, that the defendant is bound by that decision in this jurisdiction. While in a proper case his liability would be determined by the construction placed upon a statute of the domicile

of the corporation by the courts of the domicile, the remedy or method of enforcing the liability must conform to the procedure of the forum whose aid is invoked. Woodward v. Brooks, 128 Ill. 222, 20 N. E. 685, 3 L. R. A. 702, 15 Am. St. Rep. 104; Tuttle v. Bank, 161 Ill. 497, 41 N. E. 984, 34 L. R. A. 750.

While the corporation was solvent and in performance of its charter duties, no liability could have been enforced against the stockholders for subscription liability, except upon assessment made in conformity with the by-laws of the corporation. When the corporation became insolvent and went into the hands of a receiver for liquidation purposes, the court is vested with that power. Great Western Telegraph Co. v. Purdy, 162 U. S. 336, 16 Sup. Ct. 810, 40 L. Ed. 986. Until an assessment is ordered, the stockholder cannot be pursued by suit. It is proposed by the bill to secure a lien against all the property of the stockholder for the extreme amount of his undertaking, without showing what his real liability is. The result of such a proceeding might well be most inequitable. A stockholder might have an ultimate liability of only a few dollars, and at the same time be made to rest under a decree sufficient to wipe out his entire fortune, thus working great injury and perhaps ruin to him. To permit a foreign receiver to come into this state and work such an injustice, to say nothing of the injury to the home creditors, finds no justification in the principles upon which comity rests. It is in effect an attachment without the basis of certainty in the sum due. The ascertainment of the pro rata amount due from the defendant by the court of the domicile might require months and even years. To tie defendant's hands for such a period would be unconscionable. Nor is there any such proceeding known in this jurisdiction. If suit can be maintained here at all by the receiver, it can be only when an assessment has been duly made by the court in the original proceedings or where such facts appear upon the face of the proceedings as will do away with an assessment. Chandler v. Keith, 42 Iowa, 99; Chandler v. Siddle, Fed. Cas. No. 2,594; Mills v. Scott, 99 U. S. 29, 25 L. Ed. 294; Bank v. Sayward, 91 Fed. 443, 33 C. C. A. 564. The action would ordinarily then be one at common law.

As to the first ground of demurrer, the bill discloses the nature of the demand of West upon which his judgment rests in so far as to show that it was for services claimed by him to have been rendered by him to the defunct corporation after the appointment of a receiver. Undoubtedly for some purposes the corporation remained an entity. It was held as to the bank corporation now before the court, in State ex rel. Bank v. Fawcett, 78 N. W. 636, that the corporation might be heard to resist an application by the receiver to sell real estate. But on principle it would not seem that it retained its entity for the purpose of creating obligations against the stockholders. The judgment of the Omaha court is prima facie conclusive upon the indebtedness of the corporation by reason of the services rendered subsequent to the placing of the bank in a receiver's hands, but this court sitting in equity, would have full power in this proceeding to determine whether the right of

action was such as to bind the stockholders. Schrader v. Bank, 133 U. S. 67, 10 Sup. Ct. 238, 33 L. Ed. 564. When the bank went into liquidation, its power to bind its stockholders ceased except in transactions implied in the duty of liquidation. Richmond v. Irons, 121 U. S. 27, 7 Sup. Ct. 788, 30 L. Ed. 864; Schrader v. Bank, supra. The bill does not disclose that West's services were of such a nature as to bring them within the rule as to the duty of liquidation laid down in the case of Richmond v. Irons, supra. It states generally that the services were rendered to the bank in the course of the receivership. The mere fact that a judgment has been rendered against the corporation does not carry with it a liability of the stockholder therefor; under such circumstances as these, the facts showing the nature of the debt should be set out affirmatively from which the court may find that such liability exists. Especially is this true with regard to the enforcement of the double liability of stockholders.

But back of all foregoing propositions lies the question of the power of the receiver to bring suit at all in this jurisdiction. In Booth v. Clark, 17 How. 322, 15 L. Ed. 164, it was held that a receiver is an officer of the court which appoints him and that, in the absence of some conveyance or statute vesting the property of the debtor in him, he cannot sue in courts of a foreign jurisdiction upon the order of the court which appointed him, to recover the property of the debtor. Mr. Justice Day, speaking for the court in Great Western Mining Co. v. Harris, 198 U. S. 561, 5 Sup. Ct. 770, 49 L. Ed. 1163, reaffirms the rule laid down in Booth v. Clark, supra, as does Mr. Justice Peckham in Hale v. Allison, 188 U. S. 56, 23 Sup. Ct. 244, 47 L. Ed. 380. In the first-named case, Mr. Justice Day, referring to the decision of the Supreme Court in Great Western Tel. Co. v. Purdy, 162 U. S. 329, 16 Sup. Ct. 810, 40 L. Ed. 986, where the court entertained a suit brought by a foreign receiver, says:

"The jurisdiction of the Iowa court was not called in question in the State court of Iowa, where the original action was brought, nor was the question of jurisdiction raised in this court, or passed upon in deciding the case. While not detracting from the authority of that case as to the matter decided, we see nothing in it to indicate that had the question herein presented been made it would have been decided otherwise than herein indicated."

As in this case so in that, the receiver was proceeding to wind up an insolvent corporation. The facts in each case are similar. So far as the question under consideration is concerned, Justice Day lays down the rule very clearly that where the authority of a receiver comes from the order of the court appointing him, he cannot bring suit in a foreign jurisdiction. Neither the statute of Nebraska nor the decree of the court appointing the receiver in this case, nor anything shown in the bill, discloses any title in complainant other than that of any ordinary receiver acting in an equity suit. That such would be the holding of the Nebraska Court is indicated in State ex rel. German Savings Bank v. Fawcett, supra. Having no other title to the assets of the corporation than that derived from the order of the court appointing him, he cannot, under the decisions of the Supreme Court, maintain his suit herein.

I have treated at some length the several grounds .of demurrer which I consider well taken, for while any one of them is conclusive upon the court in sustaining the demurrer to the bill, yet a full discussion of my views thereon may save the time both of the parties and of the court.

The demurrer is sustained.