C. W. Elson, Receiver of the Bank of Lineville, v. George A. Wright, Administrator of the Estate of F. S. Wasson, Deceased, Appellant.

Banks and banking: DOUBLE LIABILITY OF STOCKHOLDERS: ENFORCEMENT: PARTIES. An assessment in a receivership proceeding is the proper method for enforcing the double liability of a stockholder of an insolvent bank, but under the present statute to bind a stockholder by the assessment he must have been brought into the action, individually, prior to the assessment.

Same: EXPIRATION OF CHARTER: EFFECT. The expiration of a bank charter does not operate to render stockholders thereafter liable for indebtedness simply as partners, but double liability under the statute continues, so far at least as the valid indebtedness created while the corporation had a legal existence is concerned.

*Appeal from Wayne District Court.*— Hon. H. M. Towner, Judge.

Tuesday, June 4, 1907.

Action by plaintiff as receiver of a bank to recover an assessment of 50 per cent. on stock belonging to the estate of which defendant is administrator; the liability

sought to be enforced being the double liability of stock-holders in banks as provided by statute.    Judgment for plaintiff on a directed verdict, from which defendant appeals.—
*Reversed.*

*Miles & Steele,* for appellant.

*Freeland & Carter* and *R. L. Parrish,* for appellee.

McCLAIN, J.— The Bank of Lineville was incorporated in 1879, under the general banking laws of this State, in accordance with which its charter was to expire in twenty years.    At the expiration of this period no steps were taken to reincorporate, but the bank continued to do business as a corporation under its original charter until in June, 1904, when under proceedings properly instituted, to which the bank and many of its stockholders became parties either by service of notice or by voluntary appearance, the plaintiff was appointed receiver.    In October following the plaintiff applied to the court for an assessment of 50 per cent. on the capital stock of the bank under the double liability statute for the purpose of paying its debts, and this assessment was ordered and made.    Defendant's intestate had died in 1901, owning thirty-two shares of capital stock of the bank, of the par value of $100 each, and these shares of stock still belonged to the estate at the time the assessment on stockholders was made; but, so far as appears by this record, neither the defendant administrator nor any other person representing the estate had been notified of the proceedings under which the assessment was made.    The contention for appellant is that the assessment on the stock belonging to the estate was invalid, first, because of want of notice to the proper representative of the estate of the proceeding for such assessment; and, second, because the bank had ceased to be a corporation by reason of the expiration of its charter, and no assessment on its stockholders as such could be lawfully made.

I.   The double liability of stockholders in banks is provided for in section 9 of article 8 of the State Constitution, but the method of enforcing such liability is left to

1. Banks and
BANKING:
double liabil-
ity of stock-
holders: en-
forcement:
parties.

be determined by statute.   There are similar constitutional provisions in other States, and the statutes with reference to the enforcement of the liability have been various.   In the absence of any specific provision, the liability of the stockholder under a constitutional or statutory regulation making him liable for the debts of the corporation has sometimes been treated as an individual liability to the creditors to be enforced by a bill in equity brought by one creditor in behalf of all, against one stockholder or any number of them, with the right of the stockholder held liable in such a proceeding to have contribution against other stockholders similarly liable.   *Erickson v. Nesmith,* 46 N. H. 372; *Wright v. McCormack,* 17 Ohio St. 86; *Umsted v. Buskirk,* 17 Ohio St. 114; *Palmer v. Woods,* 149 Ill. 146 (35 N. E. 1122).   And under this general theory it was early held in New York cases that an unsatisfied judgment against the corporation was not even *prima facie* evidence of the liability of the stockholder.   2 Morawetz, Corporations (2d Ed.), section 887.   But this view has not been assented to in other jurisdictions, and the validity of a judgment as showing the liability of the corporation as the basis of an action against a stockholder to enforce his individual liability has been held conclusive.   2 Morawetz, Corporations (2d Ed.), section 886.   The individual liability of the stockholder under double liability provisions has been treated as analogous to his liability for unpaid assessments; and it is pointed out that, although there is a distinction between these two classes of liability, the one being by way of security to the creditor for the debts of the corporation, and the other a direct liability to the corporation itself, yet as to the methods of enforcement there is no reason for any substantial difference.   The indebtedness of the corporation must be

established in either case, and can only be established by an action against the corporation itself. When such indebtedness has been established, and the inability of the corporation to satisfy it has been determined, then as to either class of stockholders' liabilities the receiver, representing the creditors as well as the corporation, may proceed against the stockholder, in the case of unpaid subscriptions, for the purpose of collecting a fund due to the corporation which ought to be paid over to satisfy the creditors, and in the case of the stockholders' double liability to collect a trust fund out of which the debts of the corporation are to be satisfied. In either case, in the very nature of things, the enforcement of the stockholders' liability must be predicated upon the ascertainment of the debts of the corporation and the proportionate amount to be levied on each stockholder to satisfy such indebtedness; and it is not necessary that the stockholder be individually a party to the receivership proceedings in which the indebtedness of the corporation is determined, and the amount of assessment to be collected is fixed. *Howarth v. Angle,* 162 N. Y. 179 (56 N. E. 489, 47 L. R. A. 725); *Howarth v. Lombard,* 175 Mass. 570 (56 N. E. 888, 49 L. R. A. 301); *King v. Cochran,* 76 Vt. 141 (56 Atl. 667, 104 Am. St. Rep. 922). In the New York case just cited it is said:

There is no substantial difference between the liability for an unpaid balance on a stock subscription, which is an express contract to take the stock and pay for it, and the liability for the unpaid deficiency of assets assumed by the act of becoming a member of the corporation through the purchase of stock, from which a contract is implied to perform the statutory conditions upon which stock may be owned. The fact that the former is the promise of a principal and the latter that of a surety does not affect the question. The express promise runs to the corporation, and may be enforced by it, while the implied promise runs to the creditors, and may, according to the common law of the State where it was made, be enforced for the benefit of

creditors by a receiver of the corporation appointed to wind up its affairs. The latter promise is not a part of the capital stock of the bank, but is a substitute, required by statute, for the personal liability of a partner at common law, and has the same object, which is the protection of creditors.

In the Massachusetts case the court says:

There is as much reason for holding the proceedings of the court binding upon absent stockholders in this part of the administration of the affairs of the corporation as in the collection of unpaid subscriptions. The primary fund and the secondary fund are both to be administered under the order of the court. The court, in making assessments for unpaid subscriptions, does not act merely as the representative of the directors, who might have made such an assessment, but by virtue of its general power to do all that is proper in settling the affairs of the corporation. These assessments are, in principle, like the assessments made by the court upon the members of insolvent mutual fire insurance companies under the laws of this commonwealth, which are binding upon the members to whom no actual notice is given.

And in the Vermont case, with reference to the enforcement against a stockholder in that State of an assessment made by a court in Washington, this language is used:

It is argued that the defendant is not bound by the proceedings in which the individual liability of the stockholders was determined in the State of Washington, because not a party to those proceedings, and that he can be made liable here only in a court where an accounting of the assets and indebtedness of the bank can be had. This calls for an inquiry to the effect to be given to the account taken and assessment made by the Washington court having jurisdiction of that matter. If these proceedings are an adjudication conclusive upon the defendant, the amount of his liability is ascertained, and a suit at law is the appropriate remedy. In *Hawkins v. Glenn,* 131 U. S. 319 (9 Sup. Ct. 739, 33 L. Ed. 184), an assessment ordered by a court

which had jurisdiction of the corporation was held binding upon stockholders residing in another State, although not made parties as individuals. It is said in that opinion that a stockholder is so far an integral part of the corporation that, in the view of the law, he is privy to the proceedings touching the body of which he is a member; that a decree against the corporation in respect to corporate matters, such as the making of an assessment in the discharge of a duty resting upon the corporation, necessarily binds its members in the absence of fraud; and that this is involved in the contract created in becoming a stockholder. It is true that the assessment sued upon in the case cited was on a subscription for stock, but we see no ground upon which the two liabilities can be distinguished, as regards the question under consideration; and other courts have held the same.

To the same effect, see *Gleen v. Liggett,* 135 U. S. 533 (10 Sup. Ct. 867, 34 L. Ed. 262); *Whitmore v. Oxford National Bank,* 176 U. S. 559 (20 Sup. Ct. 477, 44 L. Ed. 587); *Irons v. Manufacturers' National Bank,* (D. C.) 21 Fed. 197; *Wilson v. Book,* 13 Wash. 676 (43 Pac. 939). These cases all hold that the double liability of the stockholders under constitutional and statutory provisions is a contractual liability, and it is not different in its nature, therefore, from the liability under a stock subscription, although it is secondary rather than primary. Were such liability penal and not contractual, it could not be enforced as against stockholders residing in other States, but that it may be thus enforced is settled by the cases already cited.

If, as above suggested, the stockholders' double liability to creditors is to be worked out through a receivership proceeding in analogy to the proceedings to enforce assessments for unpaid stock, then the determination in the receivership proceedings that the corporation is insolvent, and that the stockholders must pay a specified percentage on their stock in order to satisfy the debts of the bank is conclusive; for it is well settled that in enforcing the payment of stock subscriptions the receiver may proceed against the

stockholder for the amount of the assessment, although such stockholder was not a party, except as represented by the corporation, to the proceedings in which the assessment was made. *Great Western Telegraph Co. v. Purdy*, 162 U. S. 329 (16 Sup. Ct. 810, 40 L. Ed. 986); s. c., 83 Iowa, 430; *Langworthy v. Garding*, 74 Minn. 325 (77 N. W. 207); *Collins v. Welch*, 141 Mich. 676 (105 N. W. 31); *Great Western Telegraph Co. v. Gray*, 122 Ill. 630 (14 N. E. 214).

In some States the conclusiveness of the assessment in the receivership proceeding upon stockholders on account of their double liability has been sustained. See, *Howarth v. Lombard*, 175 Mass. 570 (56 N. E. 888, 49 L. R. A. 301), and *Kink v. Cochran*, 76 Vt. 141 (56 Atl. 667, 104 Am. St. Rep. 922). But in the recent New York case, already cited, it is said that while the double liability of the stockholders as well as their liability for unpaid subscriptions may be enforced by the receiver, the assessment in the receivership proceeding is not conclusive; and it is open to the stockholder, when sued by the receiver in another State on the assessment, to show that the corporation was not in fact insolvent, or that the amount of its indebtedness was not as found by the court appointing the receiver. *Howarth v. Angle*, 162 N. Y. 179 (56 N. E. 489, 47 L. R. A. 725). As will be hereafter pointed out, it is not necessary in the present case to determine which of these two rules should be followed in this State; for, according to either one, the assessment in the receivership proceeding is *prima facie* evidence of the insolvency of the corporation and the amount of the assessment which should be made upon the stockholders to meet its indebtedness, although the stockholder was not individually a party to the receivership proceeding.

With these general principles established, we proceed now to consider the legislation in this State, and the decisions of this Court applicable to the enforcement of the stockholders' double liability. The present provisions as to

double liability of stockholders in State banks are found in Code, section 1882, which is as follows:

All stockholders of savings and State banks shall be individually liable to the creditors of such corporation of which they are stockholders over and above the amount of stock by them held therein and any amount paid thereon, to an amount equal to their respective shares, for all its liabilities accruing while they remained such stockholders; and should any such association or corporation become insolvent, its stockholders may be severally compelled to pay such deficiency in proportion to the amount of stock owned by each not to exceed the extent of the additional liability hereby created. The assignee or receiver of any such corporation, or in case there is none, or of his failure or refusal to act, any creditor thereof, may maintain an action in equity to determine the liability of the stockholders, and the amount to which each creditor shall be entitled; and all parties interested shall be brought into court.

The significant provisions of this section, so far as they relate to the stockholders' liability are drawn from the Act of 1880 (Acts 18th General Assembly, c. 208), and it is evident that these provisions exclude the individual liability of the stockholder to the creditor. The statute does not contemplate that one creditor or any number of creditors except as they are represented by the assignee or receiver shall bring action against a stockholder for the debts of the bank, holding him to the full extent of his statutory liability and compelling him to seek relief against other stockholders by an action for contribution or otherwise. Each stockholder "may be severally compelled to pay" the debts of the bank not otherwise satisfied, "in proportion to the amount of stock owned by" him, "not to exceed the extent of the additional liability hereby created." This provision evidently contemplates some proceeding in which the amount of indebtedness of the bank shall be determined, and each stockholder shall be held liable only for his proportion as fixed by the amount of stock owned

by him as compared to the total amount of the stock of the bank. Any deficiency resulting from insolvency of other stockholders or inability to reach them because non-resident or otherwise is not to be thrown upon the stockholder who is solvent and may be reached. In carrying out this plan of enforcing the liability of the stockholders this court has held in *State v. Union Stockyards State Bank,* 103 Iowa, 549, a case in which it was sought to enforce double liability against stockholders, that a valid assessment could be made in a proceeding to which the stockholders individually were not parties, and that the receiver might recover judgment against the stockholder for the amount of such an assessment; and the court in a supplemental opinion on rehearing said:

We understand the rule to be, as to the appointment of a receiver and the making of such an assessment, that all matters that necessarily inhere in the orders by which such results are attained — that is, matters to be considered and determined in making the orders — are adjudicated and conclusively settled, except in so far as they be changed by vacation or modification in the receivership proceeding upon application of parties interested, whether stockholders or others. . . . It is urged to us that one of the district courts of the State has held — following the opinion in this case — that in an action on such an assessment the amount of recovery cannot be controverted. Such a holding is correct. It was one of the matters considered and determined in making the order of assessment, and, if erroneous, the error must be cured in the same proceeding.

In the original opinion, which was affirmed on rehearing, the case of *Lamar Insurance Co. v. Hildreth,* 55 Iowa, 248, is commented upon and distinguished by the suggestion that the assessment will serve only as a guide to the amount of recovery, but the quotation above made from the supplemental opinion on rehearing clearly shows that the court finally reached the conclusion that the *Hildreth* case must be overruled.

It may be said in passing that in *Lamar Insurance Co. v. Hildreth, supra,* the 'case of *Chandler v. Brown,* 77 Ill. 333, was cited and relied on as stating the Illinois rule, which would be controlling in determining the liability of the stockholder in this State when sued under the Illinois assessment. But *Chandler v. Brown* has since been explained by the Supreme Court of Illinois as only applicable to a suit brought by creditors on behalf of themselves and others similarly situated, and not to a case where a receiver has been appointed by a court of equity to collect the assets of the corporation for the benefit of its creditors. See *Great Western Telegraph Co. v. Gray,* 122 Ill. 630 (14 N. E. 214). So that the *Hildreth* case is in fact not in point, even if it had not been in effect squarely overruled in the *Stockyards Bank* case.

It is evident, therefore, that under the provisions of Code, section 1882, above quoted, which regulates the procedure for the enforcement of the stockholders' double liability, an assessment in a receivership proceeding is the proper method of enforcing such liability. The propriety of adopting this method is well suggested in *Wilson v. Book,* 13 Wash. 676 (43 Pac. 939), a case referred to in the *Stockyards Bank* case, *supra,* 103 Iowa, 559.

There is nothing in our Constitution which defines the method by which this liability shall be made available. Hence the method must be determined by the courts and their aim should be to prescribe one which will accomplish the object of the provision with the least inconvenience to the creditors, without unnecessary annoyance to the stockholders. A method which would allow a single creditor to maintain an action at law against one or more of the stockholders for his own benefit would be so unjust to other creditors, and might result in such annoyance to the stockholders, that only the most positive language would justify the courts in holding that the liability might be thus enforced. So to hold would enable one creditor to obtain more than his share of the fund which should be derived from this liability. Not only would such a holding allow a creditor to do this, but

under it a stockholder could be subjected to a separate suit at the instance of each one of the creditors of the corporation. The same case is referred to in other cases already cited in this opinion, and always with approval.

And see, also, to the same effect, *Coleman v. White,* 14 Wis. 700 (80 Am. Dec. 797) ; *Great Western Telegraph Co. v. Gray,* 122 Ill. 630 (14 N. E. 214) ; 2 Morse on Banking (3 Ed.), section 693.

Unless our Code section specifically requires that the stockholder be made party to the receivership proceeding, we think he would be bound thereby, so far as the amount of the assessment is concerned, although not directly a party, as he is in that respect concluded by the adjudication against the corporation. As is said in *Hawkins v. Glenn,* 131 U. S. 319, 329 (9 Sup. Ct. 739, 742, 33 L. Ed. 184) : " A stockholder is so far an integral part of the corporation that in the view of the law he is privy to the proceedings touching the body of which he is a member." And in *King v. Cochran,* 76 Vt. 141 (56 Atl. 667, 104 Am. St. Rep. 922), this language is used with reference to enforcing the stockholders' double liability :

The law provides that each stockholder shall be liable equally and ratably for the obligation of the corporation to an amount equal to the amount of his 'stock in addition to the stock itself, and that, if the corporation becomes insolvent and a receiver is appointed, he shall pay to the receiver the amount of such liability when the same shall be ascertained and decreed by the court having jurisdiction of the case. The stockholder contracts with reference to these requirements when he takes his stock, and is as much bound by them as if they were incorporated in a written agreement bearing his signature. His agreement covers not only the liability, but the manner in which the extent of the liability shall be determined; and, when required to contribute in accordance with his undertaking, he cannot be permitted to question the conclusiveness of the proceeding.

So in *Howarth v. Lombard,* 175 Mass. 570 (56 N. E.
888, 49 L. R. A. 301), which is a case also discussing the
stockholders' double liability, it is said:

The undertaking of the stockholders relates directly to
the payment of amounts so to be ascertained. The ascer-
tainment is like a common case of a judgment against a
corporation, which is binding on stockholders. The mem-
bers of such corporations, as well as the corporations them-
selves, are within the jurisdiction of the local court, so
far as is necessary for the determination of the rights and
liabilities of the corporation and its members among them-
selves. In reference to this kind of liability such decisions
and orders are binding on stockholders who are not before
the court otherwise than by virtue of their membership in
the corporation.

We feel justified in saying that in the last opinion in
the *Stockyards Bank* case this court was unequivocally com-
mitted to the doctrine represented by the Massachusetts and
Vermont cases, just cited; that is, the rule which makes the
assessment in the receivership proceeding conclusive as to
the proportion which each stockholder must pay on account
of his double liability, without regard to whether he is indi-
vidually made a party in the receivership proceeding. While
this result was not so unequivocally stated in the first opinion
in that case as in the short opinion on rehearing, yet it was
plainly suggested in the first opinion; and it seems to be of
some significance that in reporting the section of the Code
already cited for adoption by the Legislature three days
after the opinion was filed the Senate Committee added the
last sentence to the section as previously recommended by
the Code Commissioners, in the following words: " All par-
ties interested shall be brought into court." This language
has not been noticed by counsel on either side of the present
case, but we cannot reach a satisfactory conclusion without
taking it into account. We find nothing in the history of
the litigation in the *Stockyards Bank* case to indicate that

attention was specifically drawn to the necessity for making the stockholders individually parties, but we cannot escape the conclusion that the definite intention of the Legislature, in adding this sentence to the specific provisions as to how the double liability of stockholders in banks is to be enforced, intended that the stockholders on whom the assessment should be binding were to be brought into court before the assessment was made. Without this specific provision, the assessment would undoubtedly be binding upon the stockholders so far as it determined the proportionate liability of each, subject, of course, to any individual defense that any stockholder might have with reference to the payment of any assessment. But under this specific language we hold that to make the assessment binding upon him in this respect he must have been brought into the litigation before the assessment. The result is that the assessment in the case now before us was not binding upon the defendant.

II. In Code, section 1629, it is provided that: " Corporations whose charters expire by limitation . . . may nevertheless continue to act for the purpose of winding up

2. SAME: expiration of charter: effect.

their affairs." Whatever the fact may have been as to whether the officers of the bank continued to transact business after the expiration of its charter, it must be presumed that the lower court in the receivership proceeding determined the necessity of an assessment upon the stockholders, and the amount thereof, on the basis of the liability of the bank as a corporation, and the defendant cannot in this proceeding insist that the indebtedness for which he is sought to be held liable was indebtedness for which he was not liable to assessment as a stockholder. We do not attempt to determine the question whether the stockholders in a bank which continues to do business after the expiration of its charter can be held liable as stockholders for indebtedness contracted after the charter has expired. No such question is before us. The statute evidently contemplates a continuance of the liability of the stockholders

until the business of the corporation is wound up, at least so·far as valid indebtedness has been contracted while the corporation has a legal existence. The receivership proceeding was incident to the winding up of the affairs of the corporation, and therefore it is wholly immaterial that it was instituted after the charter had expired. After the expiration of the charter the corporate existence continues for the purpose of discharging obligations and disposing of corporate property. *State v. Fogarty,* 105 Iowa, 32. After the expiration of its charter the corporation was still such *de facto. Miller's Adm'x v. Newburg Orrel Coal Co.,* 31 W. Va. 836 (8 S. E. 600, 13 Am. St. Rep. 903); *Central City Savings Bank v. Walker,* 66 N. Y. 424. It was not open to the stockholders to insist that they became on the expiration of the charter liable only as partners. The contention for appellant that the members of a corporate body, acting without legal authority, are liable only as partners, would be applicable in the case of a corporation defectively organized as well as in the case of a corporation acting beyond the limitations of its charter. But it is well settled that the members of a corporation defectively organized cannot insist that because of such defective organization they are partners only. *Foster v. Moulton,* 35 Minn. 458 (29 N. W. 155); *Bushnell v. Consolidated Ice Machine Co.,* 138 Ill. 67 (27 N. E. 596); *Heald v. Owen,* 79 Iowa, 23; *Seaton v. Grimm,* 110 Iowa, 145. The contention for appellant that he is to be held liable as a partner only, and not as a stockholder, under the statutory provision imposing double liability on stockholders in banks, is without support in the authorities.

For the reasons pointed out at the conclusion of the first division of this opinion, the judgment of the trial court must ·be reversed, and the case remanded.— *Reversed.*