JOHN R. EMERY, FREDERIC W. STEVENS, EUGENE STEVENSON, LINDLEY M. GARRISON, EDMUND B. LEAMING, JAMES E. HOWELL AND EDWIN R. WALKER, VICE-CHANCELLORS.

---

EDWARD S. CAMPBELL, receiver of the Middlesex County Bank,

*v.*

THE PERTH AMBOY MUTUAL LOAN, HOMESTEAD AND BUILDING ASSOCIATION.

[Decided October 20th, 1909.]

1. A party in an action at law who accepts the decision of the supreme court that his remedy is in equity, instead of taking the opinion of the court of errors and appeals thereon, makes the decision the law of the

347

case, and his right to sue in equity is not defeated by a subsequent decision of the court of errors and appeals in a similar case establishing the rule that the remedy is at law, though the decision may control as to the amount of the recovery.

2. Where an assignment of shares in a building association was made to a bank as collateral before the termination of the charter of the bank, and it continued to transact business as a corporation under the theory that its charter was extended by *1 Gen. Stat. 1895 p. 972,* as construed by the banking and insurance department, the assignment should not be declared invalid because of a supposed legal non-existence of the corporation during the loans secured by the assignment.

3. Notice to the treasurer of a building association of an assignment of shares to a bank of which he was cashier as collateral for a loan is not notice to the association of the assignment, where the treasurer and cashier contemplated in procuring a certificate for matured shares on maturity of the shares a fraud on the bank, and his knowledge of the bank's rights will not be imputed to the association.

4. A building association issuing matured shares in payment of shares which had matured fixes the rights of the shareholder in the distribution of the assets in which he is entitled to share.

5. The books of a corporation are for many purposes the primary evidence of membership as between the corporation and the members, and in the payment of dividends without notice of an adverse claim a corporation is protected by payment to the holder of record on its books.

6. As between a building association and its members, a payment on the final distribution of assets to the shareholder of record without notice of a previous assignment is a valid payment as against a holder of the certificate by assignment who has not applied for a transfer on the books.

7. Where a building association paid shares on their maturity by issuing a non-negotiable certificate of indebtedness to a third person personally, and the association knew of the assignment of the shares to him, the issue of the certificate was as between the association and the shareholder or those claiming under him an issue to the third person as assignee, and the certificate was subject in the hands of any holder to the defence that it was procured by the third person's fraudulent suppression of a previous assignment of the original shares. so that on notice to the association of such previous assignment, a payment of the matured certificate was at its own peril.

8. The right of a bank holding as assignee to secure a loan stock in a building association is entitled to share on distribution on the maturity of the shares, and it may then demand the amount coming to its assignor, and the time fixed for the accrual of its cause of action against the association is not affected by the fact that the association, without knowledge of the assignment, issued matured certificates on the maturity of the shares at the option of the assignor.

9. The statute of limitations is not applicable to an equitable interest in a fund held in trust by a building association for distribution among the holders of shares in a matured series.

10. Stock in a building association was assigned to a bank as collateral. The association had no notice of the assignment, and, on the maturity of the shares, it paid them by issuing a certificate of indebtedness to a third person individually, who was to the knowledge of the association an assignee of the original holder. The third person pledged the certificate, and the pledgee recovered in a suit from the association. The bank and its receiver delayed notice of any claim under the assignment until nearly six years after the maturity of the shares, and until after the certificate of indebtedness had been, with the consent of the receiver, sold to the pledgee for the payment of his debt. The pledgee was a *bona fide* pledgee.—*Held*, that the right of the bank to recover from the association on the original shares was barred by laches.

11. A payment by a building association to the original holder of shares of the amount due, made with notice of a third person's claim, under an assignment of the shares from the owner, is at the risk of the association, and the assignee may recover from the association the amount due on the shares on their maturity.

Heard on bill, answer, replication and proofs.

*Mr. Sherrerd A. Depue,* for the complainant (*Messrs. Lindabury, Depue & Faulks,* solicitors).

*Mr. Alan H. Strong,* for the defendant.

EMERY, V. C.

The substantial case disclosed by the pleadings and proofs in this case is as follows: On August 27th, 1891, one Louis Briegs, being then the owner of ten shares, Series "A," of the stock of the defendant, a building and loan association, assigned these shares to the Middlesex County Bank as collateral for a loan obtained from the bank. On the same date Rosa Briegs, his wife, assigned also to the bank five shares of stock in the same series, of which she was the owner, and as collateral for her loans or those of her husband. The constitution of the association provided that "certificates of stock may be transferred in person or by attorney in presence of the secretary, and shall be recorded in the books of the association." The assignments to the bank authorized the transfer by the secretary on the books, but no transfer was made. The certificates for the shares, together with the assignments to the bank, were originally in the possession and control of George M. Valentine, the cashier of the bank, and so continued until the

failure of the bank in 1899, when they came to the possession of complainant as receiver of the bank, together with the notes for which they were collateral. The shares were duly sold by the receiver to pay the loans, were purchased by him at the sale, and assignments of the shares were also made to the receiver by Louis Briegs and Rosa Briegs in February, 1901. On March 8th, 1901, notice of the assignments and of the receiver's title or claim to the shares was given to the building and loan association. In the meantime, and subsequent to the pledging of the shares as collateral to the bank in 1891, the status of the Briegs to the building and loan association, in reference to the shares, was as follows: The dues on the shares were regularly paid, the dues on both sets of shares, and also other shares, being paid by Louis Briegs's own check. The association had several shares or series maturing at successive years, and under its charter and by-laws the board of directors on or about July 1st, 1896, declared the shares in Series "A" matured. By virtue of this declaration the Briegs, not being borrowers of the association, were entitled under the charter and by-laws to receive $200 for each share. Shortly before July 1st, 1896, Valentine, the cashier of the bank (who held in his possession as cashier the certificates and the assignments to the bank), became also treasurer of the building and loan association, and he had also in May, 1896, become the assignee, under the Assignment act, of Louis Briegs, for the benefit of the latter's creditors. The shares of stock were not specially mentioned in the deed of assignment, but under the statute (*1 Gen. Stat. p. 78 ¶ 2*) the title of Louis Briegs, subject to the loan, passed to his assignee, Valentine, who had the actual possession of the shares for the bank. The building and loan association, instead of paying off at once the matured shares, issued certificates of matured shares of the par value of the original shares, payable at a future period, January 1st, 1907, with interest until paid. These certificates for matured shares were usually or regularly issued on the surrender of the original shares, where certificates had been issued, and were signed by Valentine as treasurer as well as by the president and secretary of the association. Valentine procured the issue to himself and in his own name of a certificate for the ten matured

shares to which Louis Briegs, as owner of the original shares on the record or books of the association, was entitled. This certificate for matured shares, dated July 1st, 1896, was delivered to him about October 30th, 1896, and by him deposited with another bank (the First National Bank of South Amboy) as collateral security upon a loan to himself. Up to the time of the delivery of this certificate and the deposit no notice had been given by the Middlesex County Bank to the association of the assignment of any of the Briegs shares to it as collateral, nor does it appear that any of the officers of the association (except Valentine himself) had notice of the assignment to the bank of any of the Briegs shares. They did, however, have notice of Briegs's assignment to Valentine, and the secretary of the association says that the certificate of matured shares for the ten shares of Louis Briegs was, as he understood it at the time, given to Valentine, as claiming it as assignee, although not so described in the certificate. The certificate for the Louis Briegs matured shares issued to Valentine continued in the possession of the South Amboy Bank until after the failure and insolvency of the Middlesex County Bank in 1899, and as collateral to Valentine's original personal notes renewed from time to time. In January, 1901, the association paid the amount due on these shares to the Amboy bank after suit brought. As to the Rosa Briegs five shares in Series "A" no certificate of matured shares appears to have been given, but on February 20th, 1897, Valentine, claiming (without any right or authority so far as appears by the proofs) that these original shares, although standing in Rosa Briegs's name, really belonged to the creditors of her husband, and passed under the assignment to him as assignee, received from the association, by check to himself personally, payment of one of the matured shares of Rosa Briegs. For the other four shares no certificate of matured shares was issued, and no payment made on their account until August, 1902, when a sum equal to the amount then due, with interest on these four shares, was paid to Rosa Briegs herself, upon her giving indemnity. This payment was made more than a year after notice of the complainant's claims to the money due on the shares, and also after a suit at law brought by complainant as receiver

against the association to recover the amounts due on both the Louis and Rosa Briegs shares. The Briegs now say that this payment was made on account of the amount due Rosa Briegs on her five shares in another series, "F," and not for the four matured shares of Series "A," and that these have never been paid. The association claims that the payment was for the Series "A" shares. So far as relates to complainant's claim to the amount due on these shares the dispute is immaterial, because the payment to Rosa Briegs after notice of complainant's claim cannot discharge defendant if the complainant's claim is valid.

In the suit at law brought by complainant to recover the amount or value of the fifteen shares, it was held by the supreme court that the remedy. was in equity and not at law. *Campbell, Receiver,* v. *Perth Amboy Loan Association (1901), 67 N. J. Law (38 Vr.) 71.* The substantial ground of the decision, as I read it, was, that under the building and loan association laws, where shares had matured, the fund to be distributed among the shareholders was a trust fund, to be distributed under the direction of the court of chancery, if the directors failed to recognize a shareholder's claim. The decision was not rested on the technical point that the declaration failed to aver that in fact the shares had matured (which would have been an amendable defect), neither was there any suggestion that if there had been an averment that there were other shares than Series "A," · a legal cause of action would have appeared upon the declaration of the directors, under its charter, that the shares had matured. The legislation providing for the issue of different series was referred to in the opinion (*Ibid. 73*), but no suggestion was made that in such case the maturity would occur by force of the declaration of the directors. And, as the failure to aver the existence of different series was also an amendable defect, the opinion must, I think, be fairly construed as intended to establish as the law of this case—*first,* that the mere declaration of the directors of the maturity of the shares was not sufficient to establish such maturity as to any one of a series of shares, and *second,* that the fund belonging to any series, when matured, was a trust fund for all the shareholders of the series, and on failure

of the directors to acknowledge the right of any shareholder, or person claiming under him, to share in the fund, the remedy to establish and recover his share was in equity and not at law. The decision was accepted by the plaintiff in the suit as the law of the case, as he had the right to do, instead of taking the opinion of the court of errors and appeals. *Borcherling* v. *Ruckelshaus (Court of Errors and Appeals, 1892), 49 N. J. Eq. (4 Dick.) 340; Headley* v. *Leavitt (Court of Errors and Appeals, 1903), 65 N. J. Eq. (20 Dick.) 748, 755.* This bill was thereupon filed in 1902, and, pending the hearing, the court of errors and appeals, in *Cunningham* v. *Mutual Loan, &c., Association (November, 1903), 72 N. J. Law (43 Vr.) 175,* decided that where shares in different series were issued, the charter and by-laws might determine the manner in which the series should mature and determine, and authorize the directors to declare them matured, and that on such declaration the holder in a series ceased to be a member and became a creditor entitled to his action at law for the declared value of the shares. In the opinion of Chancellor Magie the previous decision of the supreme court in the *Campbell-Perth Amboy Case,* was referred to, but decision on its correctness was expressly reserved. In a still later case, however (*Ryle* v. *Manchester Building and Loan Association (March, 1907), 74 N. J. Law (45 Vr.) 840*), the court of errors and appeals expressly disapproved the *Campbell Case* as to the right to sue at law, and approved and followed the *Cunningham Case.* The result of these decisions on the question of the proper forum for relief is that, if the present suit were a new suit between the parties, the bill must be dismissed because of the remedy at law, unless the fact that complainant may be an equitable assignee only of the shares (*Broadway Bank* v. *McElrath (Chancellor Green, 1860), 13 N. J. Eq. (2 Beas.) 24, 30*), might be held to give the court of equity jurisdiction. But independent of this basis for equitable relief, the complainant, having the right to accept as the law of this case the opinion of the court of law delivered in the case, that the remedy was in equity, has, under the cases above cited, the right in this case and against the defendant, to pursue the equitable remedy for the purpose of recovering the amount which

may be due to him, claiming under the assignment. And the subsequent decisions of the appellate court made between other parties establishing finally the general rule that the remedy is at law, while they do not have the effect of annulling the rule of law settled as the law of this case between the parties as to the forum of the remedy, may control the rule as to the amount of recovery which can be had in this suit brought to hearing after the establishment of the amount to be recovered. And the recovery here, if at all, must therefore be by a decree for the amount declared as the value of the shares, admitted by the answer to be the value, and due to complainant as a creditor and not by a decree for account as was supposed in the *Campbell Case.*

The objection therefore that complainant's remedy, if he have any, is at law, made in the answer and pressed at the hearing, is not well founded.

Another technical objection to complainant's recovery is also without merit. This is the objection that the charter of the Middlesex County Bank expired by limitation twenty years after its organization, and in 1892. It is claimed that the proceedings for extending the charter under the law of April 21st, 1876 (*1 Gen. Stat. 1876 p. 972*), were ineffective because this law was a supplement to the "Act concerning corporations," and, as is claimed, did not apply to banking corporations. But the Corporation act of April 7th, 1875 (Revision), in many respects applied to all corporations, including banks, and contained some sections specially regulating the management of the affairs of banks (section 7 is one of them) as to dividends. This supplement has been acted on by the banking and insurance department as authorizing the extension of bank charters as well as others, and in view of the facts that the original assignments of shares in this case was made before the termination of the original charter, and that the bank has been ever since, up to the time of its failure, a *de facto* corporation, making loans and discounts, and transacting a general banking business, the assignments should not be declared invalid because of supposed legal non-existence of the corporation during the loans secured by the assignments.

The real question on the merits of the case as to the Louis Briegs shares is, whether the payment of the original shares on their maturity by the issue and delivery of the certificate of matured shares to Valentine, claiming them as assignee of Briegs, and which have since been paid to a *bona fide* holder, is valid or effective, as against the complainant claiming title to the original shares under an assignment made nearly five years prior to the payment, but of which the association had no notice, other than the notice to Valentine, its treasurer at the time of the issue, of the new certificate, who at the time had the certificate and assignment to the bank in his possession or control as cashier of the bank and as collateral for its loans. It is urged by complainant's counsel in his brief, that notice to or knowledge of Valentine, then the treasurer of the association, was notice to the association of the bank's claim, but as the case clearly shows that Valentine, in having the certificate for matured shares, contemplated an independent fraud on the bank, either for his own benefit or that of the estate of which he was assignee, his knowledge of the bank's rights is not to be imputed to the association of which he was treasurer. *Camden Safe Deposit Co.* v. *Lord* (*Vice-Chancellor Bergen, 1904*), *67 N. J. Eq. (1 Robb.) 489, 492; 2 Pom. Eq. Jur. § 675.* The issue of the matured shares must therefore be taken to have been without notice of the bank's rights, and the precise question is, was the issue by the association to Valentine, without the production of the original shares, valid? Had the issue been of shares of a corporation intended to continue the membership and rights of a shareholder, the general rule would seem to be that the issue of such certificate, without requiring the delivery of the one in lieu of which it is issued, is at the risk of the corporation. *Cook Corp. (6th ed.) §§ 402, 489.*

This issue of matured shares was not, however, a certificate evidencing or intended to evidence continued or existing rights as a member or shareholder, but was a satisfaction or settlement of the final rights of the shareholder on distribution of the assets or fund in which he was entitled to share, and the present inquiry is therefore further narrowed, and is, whether in reference to a transaction having the character of the final distribu-

tion by the corporation itself to its members of their share of the assets, the distribution may be made to the member appearing to be such according to the records or books of the company (or his assigns under notice of assignment given), or whether in such case the production of the original certificate is necessary for a valid distribution in order to protect the corporation. For many purposes the books of the corporation are the primary evidence of membership, and the certificate is only secondary as between the corporation and its members. Thus for the purpose of exercising personal rights of membership, such as voting, &c., the corporation may require the transfer on the books, and in the payment of dividends without notice of an adverse claim it is undoubtedly protected by payment to the holder of record on the books of the company. *2 Thomp. Corp.* § *2387.* Does the same principle apply to the final distribution of assets of a corporation as to the payment of the dividends? If it does, then the association making distribution to the shareholder of record, without notice of any intervening claim, is discharged from liability for further payment on those shares, even if the certificate be not surrendered. In my judgment the same rule is applicable as between the corporation and its members on the final distribution of assets as on the payment of dividends, and a payment of the share to the shareholder of record at the time of distribution, made without notice of a previous assignment, is a valid payment as against a holder of the certificate by assignment, who has not applied for a transfer on the books.

This payment or distribution was not, however, a payment in cash to the shareholder of record, but a payment or distribution by a non-negotiable certificate of indebtedness, issued to the assignee of the shareholder. The association had notice of this assignment and the certificate was issued as to the assignee. It must therefore be considered as if issued to the shareholder himself, and the designation as assignee, which was merely descriptive or convenient evidence of the character in which Valentine held it, was not, I think, essential to its issue to him, claiming it as assignee. The issue to him personally (being in fact the assignee of Briegs) was sufficient, and the omission of the designation did not make the issue, as between the corporation and

Briegs, its stockholder, or those claiming under him, an issue to a person not the assign of Briegs. But in reference to this payment, the further question arises as to the effect of its having been made by the issue to Valentine of a non-negotiable certificate, and the status of the case by reason of this fact is one of more difficulty. This certificate being non-negotiable in the hands of Valentine or his assigns, was subject, in the hands of any holder, to the defence that it was procured by Valentine's fraudulent suppression of the previous assignment to the bank, and had notice been given to the association of the bank's claim previous to its payment of the matured certificates to a *bona fide* holder, such subsequent payment would have been at its own peril. But, as appears by the evidence, the Amboy National Bank sued upon its claim under the certificates in the year 1900, and, after judgment against it, the association in February, 1901, paid the claim arising under the certificates, without notice of any claim of the Middlesex County Bank to the payment of the shares for which the matured shares were given.

Complainant's notice of its claim under the assignments does not appear to have been given until March 8th, 1901, the date alleged in the bill and admitted by the answer.

And it further appears by a letter of the complainant, as receiver, to the Amboy bank, dated November 9th, 1899, that the receiver (under a judgment and execution against Valentine) had levied on Valentine's interest in these matured shares, subject to the Amboy bank's claim, and in other shares, and that the receiver consented to a sale of this and other collateral by the Amboy bank to pay its loans to Valentine, notwithstanding the levy, and requested that the surplus only be held. The Amboy bank made the sale, purchased the stock, and then brought suit against the association for the payment, and received payment on the shares.

It does not appear that this consent to the sale was made with knowledge on the part of the receiver that the shares or any of them were issued to Valentine by the association to pay and satisfy the shares held by the receiver, and in the absence of such knowledge, the consent may not operate as a waiver of the receiver's claim, or an estoppel against asserting

it, but the consent is important as bearing on the receiver's delay in making his present claim and the effect of it on his right to relief in equity.

The question, therefore, is, whether the certificate for matured shares having been issued in 1896 and paid in 1901 under these circumstances to a *bona fide* holder after suit, without notice to the association of the claim on the part of the bank, which arose in 1891 by reason of the assignment of the original shares, can now be declared valid.

The bank's right to the share on distribution arose in July, 1896, on the maturity of the shares, and it was then entitled to demand the amounts coming to the Briegs. There was no provision in the charter or by-laws for the issuing of the matured share certificates, and the taking of these by a shareholder was optional purely. If the shareholder be considered as a creditor of the association, and not a *cestui que trust* in a trust fund held for distribution, complainant's right of action for the debt to Briegs, due from the association, accrued on the maturity of the shares, July 1st, 1896. The bill in the cause was filed in October, 1902, more than six years after this cause of action arose. The time fixed in the certificates issued for the payment (January 1st, 1907), fixed the period of suit for those who received the certificates, but for those only, and is of no avail to a creditor claiming the amount due July 1st, 1896, on shares, without regard to these certificates and adversely to the holder of the certificate actually issued.

But, as between the parties to this suit, I take it to be settled as the law of this case, by the decision in the Campbell suit, that the nature of the complainant's right is that of an equitable interest in a fund held in trust by the association for distribution among the holders of shares in a matured series. The statute of limitations is not applicable to such trusts. In *Condit* v. *Bigalow, 64 N. J. Eq. (19 Dick.) 504, 514,* and *Mills* v. *Hendershot (1905), 70 N. J. Eq. (4 Robb.) 258, 267,* the New Jersey cases on the application of the statute in equity are considered. And, independent of the statute, delay on the part of the Middlesex County Bank and of the receiver in giving notice of the assignment of the shares, or of their claim under it, may

be a bar to the suit, especially when, as in this case, the delay has resulted in, or contributed to, the change in the situation by payment to another. The bank and the receiver delayed notice of their claim until nearly six years after the maturity of the shares, and until after the matured shares had been (with the consent of the receiver) sold by a *bona fide* pledgee for the payment of its debt, given perhaps in ignorance of his rights, and until after the shares had been paid by the association to such pledgee as such purchaser. In *Bank of Commerce Appeal, 73 Pa. St. 59*, it was held that the officers of a bank who had, as its trustees, distributed its assets among its stockholders on dissolution, and had paid his share to one of the stockholders of record, without notice of his assignment of his shares, were not liable to a previous assignee of the shares who had not had the same transferred on the books and had given no notice. It was held that in the absence of such notice the payment to the shareholder of record, without requiring production of the certificate, was not an act of negligence on the part of the officers making them liable. The claim of complainant as assignee of the Louis Briegs shares must be held to be barred in equity.

As to the Rosa Briegs shares, the defendant's status is altogether different, and there is no equitable reason for depriving complainant of his rights under the original assignments as collateral as well as under the Rosa Briegs assignment of 1901. The payment to Rosa Briegs of the amount due on four of these shares, if made at all, was made with full notice of complainant's claim, and the payment of the value of one share to Valentine in 1907 was invalid. He claimed not under but adversely to her, and the payment was at the risk of the association, which must look to its indemnity.

The complainant is entitled to a decree based on its rights to the shares of Rosa Briegs, and to the declared value, which is admitted by the answer. The decision in the *Cunningham Case* is effective in this case to establish the amount of recovery to which the decree is to be limited, and no further accounting is either necessary or proper.