## M. H. McCarthy Company et al., Appellants, v. Central Lumber & Coal Company et al., Appellees.

**RECEIVERS:** Appointment—Preliminary Hearing—Decision on Merits
1 —Effect. The court has no legal right, against the clearly expressed purpose of a plaintiff, to convert a preliminary hearing as to the appointment of a receiver *pendente lite* into a hearing on the full merits of the entire action and to enter a dismissal accordingly.

**RECEIVERS:** Appointment—Material Considerations. On the issue
2 whether a temporary receiver should be appointed, in an action by minority stockholders to liquidate the affairs of a corporation whose

charter had expired, the court, always proceeding cautiously, will, *inter alia*, give due consideration to the following matters: (1) The fact that ordinarily such liquidation is effected through the corporate organization; (2) the relative financial holdings of the contending parties; (3) the fact that the parties agree that the inherent nature of the business requires a temporary continuation of the business as a part of the liquidation; (4) whether, from the nature of the business, the court would be practically compelled to choose a receiver from the management which is under attack; (5) the integrity of the past and present corporate management; (6) whether liquidation has been unduly delayed, in view of general economic conditions; (7) the probability of loss or impairment of assets under the present corporate management; (8) the solvency or insolvency of the corporation.

**APPEAL AND ERROR:** Abstracts of Record—Motion to Strike. The court will be slow to strike amendments to an abstract when the filing appears to be actuated by a good-faith desire to present with great thoroughness matters of unusual importance.

Headnote 1:    34 Cyc. pp. 128, 129.    Headnote 2:    34 Cyc. pp. 81, 140, 145.    Headnote 3:    4 C. J. p. 413.

*Appeal from Dubuque District Court.*—P. J. NELSON, Judge.

SEPTEMBER 20, 1927.

Minority stockholders' suit for the appointment of a receiver and the winding up of the affairs of the defendant Central Lumber & Coal Company, a domestic corporation. Decree for defendants. Plaintiffs appeal. Order denying receivership *pendente lite* and temporary injunction incorporated in final decree affirmed. Final decree reversed, and case remanded.—*Affirmed in part; reversed in part.*

*Kenline, Roedell, Hoffmann & Tierney,* for appellants.

*Brown, Lacy & Clewell* and *Frantzen, Bonson & Gilloon,* for appellees.

MORLING, J.—This case was here on certiorari to review the same judgment, report of which may be found in *McCarthy Co. v. Dubuque District Court,* 201 Iowa 912. Reference may be had to the opinion there for a statement of the case. It was there held that the remedy by appeal was adequate, and that certiorari would not lie.

I.  Did the plaintiffs submit themselves and the case to a final determination of the issues and for the rendition of final judgment?

The petition was filed September 2, 1925.  It alleges that the charter had expired, and that the corporation could continue as such solely for the purpose of winding up its affairs; that plaintiff, as a stockholder, was opposed to renewal; that the defendant majority stockholders, instead of providing for liquidation, as provided by law, passed a resolution attempting to authorize the board to proceed with the liquidation in such manner as in their judgment seemed best; that, assuming to act under such authority, the majority adopted a resolution attempting, without right, to authorize the officers temporarily to make such purchases, incur such indebtedness, and do such other things as are reasonably necessary to temporary conduct of the business; that, pursuant thereto, the officers undertook to continue the business, instead of winding it up as speedily as possible; that the officers by means set out therein were seeking to force plaintiffs to become liable, as unwilling partners, in continuing the business, and to avoid speedy liquidation; that the loss of good will is manifest; that the overhead expense of about $85,000 per annum is maintained, as for a going business; that further delay in winding up by sale of the yards before they lose their value as going concerns will cause irreparable injury, and will result in waste; that there are internal dissensions as to liquidation, as well as to the right of the corporation to continue business as a going concern.  The prayer is:

1. RECEIVERS: appointment: preliminary hearing: decision on merits: effect.

"That a time of hearing be fixed, and notice thereof be prescribed; that, upon such hearing, a suitable person be appointed receiver, to take charge of and wind up the affairs of the corporation, as provided by law; to have the action of the board in continuing the business rescinded, and decreed null and void, and for an accounting by a personal judgment against the defendant managing officers, and for general relief, including judgment against the defendants for costs."

On the same day, which was a regular day of the May term of court, the court ordered that the hearing on the petition "for the appointment of a receiver be had at 10 o'clock

in the forenoon of the 10th day of September, 1925, * * * and that, unless voluntary appearance is made, 5 days' notice thereof be given to defendants'' in the manner prescribed. The abstract and amendment recite that, on September 3, 1925:

"There was placed with the sheriff of Dubuque County, for service, a notice to the defendants of the filing of said petition, of the court's order so fixing the hearing on said petition for appointment of a receiver, and, unless appearance thereto is made, the court will appoint a receiver to take charge of the assets of said corporation and wind up its affairs; and further, that, on final hearing, the court is requested to make permanent said appointment of a receiver to wind up the affairs of the Central Lumber & Coal Company, to grant general relief, and for judgment for costs, and requiring appearance and defense thereto before noon of the second day of the next October term, 1925, of said court, which will commence October 5, 1925, otherwise default will be entered, and judgment and decree rendered, as prayed.''

On September 4, 1925, there was filed an appearance for all the defendants. The St. Anthony & Dakota Elevator Company was not then named as defendant. On September 7, 1925, the defendants filed answer, the first paragraph of which consisted of a denial that the facts well pleaded were sufficient to entitle plaintiff to have a receiver appointed, or to any other relief. No motion to dismiss or other motion directed to the pleadings was filed. The answer took issue upon the principal allegations of the petition, and prayed that the evidence presented "on the hearing of the application herein be by oral evidence of the witnesses in court, and the prayer of plaintiffs' petition be denied,'' and petition dismissed, with costs.

The record before us does not set out any order or agreement for change in date of hearing, but recites that, on September 17, 1925, a regular day of the May term, "proceedings were had and continued to and including September 25, 1925, as follows:

" 'The Court: Proceed.

" 'Mr. Kenline: I take it the court has been advised of the nature of this hearing for the appointment of a temporary receiver.

" 'The Court: Just that there was an application made for an appointment.' "

Counsel for defendants thereupon argued that the hearing was not for the appointment of a temporary receiver, but on the question whether the court would take the property out of the hands of the board of directors and put it into the hands of a receiver. He asked for a statement from plaintiffs' counsel "of what he thinks we are going to try." Plaintiffs' counsel then stated:

"It is our claim that we are simply introducing testimony and submitting the record to the court for the purpose of determining whether the facts are such that, under the law, the court should appoint a receiver of the assets of this corporation. The petition, of course, asks other relief that properly will come up in the main hearing and trial of this action. It isn't involved at this time. Here is a petition filed, and in the nature of things, a trial upon the merits can't be had until the October term of court; but at this time we are asking the court to hear the evidence upon the question as to whether or not, under the facts, the court should appoint a receiver of the assets of this company. Whether they call him a temporary receiver or a receiver doesn't matter very much, since, in either event, the receiver has charge of the property under the direction of this court." ·

"Mr. Brown: I understand that counsel, then, isn't asking for the appointment of a temporary receiver, as distinguished from any other receiver, but that the question for trial here and now is whether or not this court will appoint a receiver to take possession of the business and property of this company; and that is our theory of what is here for hearing, so that there is evidently no dispute on that proposition. * * * That the question to be tried now by this court is whether or not this court will appoint a receiver for the property of Central Lumber & Coal Company. Of course, I may suggest to the court and counsel that, if a receiver is appointed, it must necessarily, for all practical purposes, be a final appointment of a receiver; because this business is of a character that, if a receiver is appointed, the property cannot be taken over and stand still without great loss. * * * If a receiver is appointed at all, it must be a permanent receiver."

The plaintiffs' counsel then proceeded to make a statement of the facts, concluding thus:

"We believe that, under this state of facts, it is the duty of this court to appoint a receiver to do what the law says should be done, to wind up its affairs, and avoid a condition which both parties here unite in saying will cause irreparable loss to the stockholders."

Defendants' counsel made his statement in accordance with his contention that a final determination should be made. The court asked whether there was a serious dispute on the facts, defendants' counsel replying that there were no facts pleaded in the petition. The court then said:

"I believe from my examination of these pleadings that there are issues of fact to be determined. You may proceed."

The parties then proceeded with the introduction of their evidence, occupying several days. During the hearing, the plaintiffs amended their petition, alleging, in substance, misconduct of the officers in contracting for the sale of a group of yards without competitive bidding, and alleging that a better offer had been made by another company, which the officers refused to consider. The amendment prayed for an injunction, and that the officers be required to offer the group to competitive bids, and that, upon final hearing, the injunction be made permanent. Defendants answered the amendment. At the conclusion of the argument, the court announced that the application for a receiver and application for an injunction would be denied, and, in response to a question by defendants' attorney, said further that an order would be made, dismissing the petition. On September 26, 1925, plaintiffs filed exceptions to the proposed decree, on the ground, among others, that the hearing was limited to the question of the appointment of a receiver and the issuance of a temporary injunction; that the hearing was not upon the merits; and that the court was exceeding its jurisdiction in attempting to adjudicate the merits. Decree was entered, denying the application for the appointment of a receiver and the application for an injunction, denying all other relief prayed for in the petition and amendment, and dismissing the petition, with costs.

On this record, it must be held that the plaintiffs brought their suit for the October term, and that they submitted them-

selves and their case to the court at the May term merely upon an application for the appointment of a receiver *pendente lite.* It cannot be found that the plaintiffs, either expressly or by implication, consented to a final hearing. Plaintiffs' counsel plainly stated plaintiffs' position that they were there merely on the question of the appointment of a receiver, and that other relief was asked which would come up in the main hearing. The fact that he was asking for greater powers for the receiver than he was entitled to, did not remove the limitation which he rightfully placed upon plaintiffs' appearance, nor did the insistence of opposing counsel that plaintiffs were there for purposes for which they plainly announced they were not, enlarge the purpose of the hearing or the authority of the court over the plaintiffs. It was known that the plaintiffs were consenting only to a hearing on their preliminary application, and not to a final trial of the issues. The plaintiffs had the right to apply for the appointment of a receiver *pendente lite* and to be heard upon it. They might well desire to exercise that right while not prepared for final hearing. The right to such preliminary hearing is a valuable one to the parties, and its exercise is often in the interest of the speedy administration of justice. Such a hearing may develop the futility, but it does not, of itself, and ought not to, bar a final hearing. In cases such as this, the circumstances and the conduct of the defendants might, by the time of the final hearing, be such as to entitle plaintiffs to the relief asked. See *Eclipse Lbr. Co. v. Davis,* 201 Iowa 1283. If the petition insufficiently pleaded facts, as defendants claimed, they should have attacked it by motion. The contention that the only relief asked for was the appointment of a receiver, places too narrow a construction upon the petition and amendment.

The outcome of a suit, when issues of fact are joined, is the final judgment after a trial; not the result of an interlocutory hearing, however full it may be. It is probably true, as was, in effect, urged, that the granting of the interlocutory application here would result practically in a permanent receivership and a winding up by the court. This was proper argument for denying the interlocutory application, but the denial of that application would not constitute a ground for denying, or a

bar to final hearing. *Baehne v. Independent Sch. Dist.,* 201 Iowa 625.

II. Ought the court to have entered an interlocutory order for the appointment of a receiver?

The statute reads that, on petition wherein either party "shows that he has a probable right to, or interest in, any property which is the subject of the controversy, and that

2. RECEIVERS: appointment: material considerations.

such property, or its rents or profits, are in danger of being lost or materially injured or impaired," the court or judge, "if satisfied that the interests of one or both parties will be thereby promoted, and the substantial rights of neither unduly infringed, may appoint a receiver to take charge * * * during the pendency of the action * * * " Section 12713, Code of 1924.

The defendant stockholders have as substantial rights in the assets of the corporation as have the plaintiffs. The preferred stock, of which the plaintiff T. H. McCarthy held $100,000, has been paid. Of the common stock, amounting to $1,250,000, the plaintiff M. H. McCarthy Company holds $332,700, and the plaintiff T. H. McCarthy $27,600,—a total of $360,300. The defendant William H. Day, president, holds $523,400. His wife, the defendant Monira T. Day, owns $108,700,—a total for them of $632,100; the defendant A. C. Johnson, vice president, holds $90,300; the defendant A. E. Hough, also a vice president, owns $29,100; and defendant Steichen, the secretary, $29,100. These are the active executive officers, of many years' experience, whose competency and integrity are not questioned. The evidence is "positively and definitely they [M. H. McCarthy Company and T. H. McCarthy] assured us that they had the utmost confidence in the management and in the business, and the matter [of independent audit] was dropped."

It is not to be presumed that the defendant officers, under the circumstances here shown, will lose or impair the property. Plaintiffs' leading proposition is:

"'Termination of charter leaves corporation without right to thereafter function, except as may be given by statute for purpose of winding up its affairs. Its powers thereafter are limited to winding up its affairs, without right to enter into new contracts or otherwise continue as a going concern."

The corporate existence, notwithstanding the expiration of the charter by lapse of time, continues, to the extent necessary to enable it to hold and dispose of its property, discharge its obligations, and wind up its affairs. Code of 1924, Section 8392; *State v. Fogerty,* 105 Iowa 32, 36; *Elson v. Wright,* 134 Iowa 634; *Wisconsin & Arkansas Lbr. Co. v. Cable,* 159 Iowa 81. The statutes make no provision for the winding up of the corporation by the court or by trustee merely on account of expiration of charter. Normally the business is to be wound up by the corporate organization, and not by the court. *Stewart v. Pierce,* 116 Iowa 733. The corporation and its officers, therefore, have power to function. We said in the certiorari case that the corporate entity ceases upon the expiration of the charter, and that:

"The corporation no longer has authority to carry on the business for which it was originally organized and chartered. It must proceed, acting through and by its appropriate officers, with reasonable speed at least, to wind up the corporate affairs." *McCarthy Co. v. Dubuque Dist. Court,* 201 Iowa 912, 916.

Minority stockholders cannot be compelled to assume the hazards of continuing the business after expiration of the fixed period of the enterprise. It is the right of every stockholder, on the expiration of the charter, to have the property converted into money with reasonable expedition and have the net produce divided. Idem; *Mason v. Pewabic Mining Co.,* 133 U. S. 50. But here, the parties are agreed that the 50 yards which make up the bulk of the corporate property should be sold as going concerns, and to that end that the business should be temporarily continued. The plaintiffs' contention is not that the business ought not to be continued, but that it must be conducted by the court, acting through a receiver. It must be assumed here, therefore, that the temporary continuance of the business is a proper element of the winding-up process. The plaintiffs do not make the contention that a court, inexperienced in the industry and in affairs of the company and unacquainted with the localities, can hope to carry on the business and close out 50 yards in 50 varying communities with the same efficiency and economy that are to be expected from the experienced and presumptively competent and honest managers,

whose personal interests in major proportions are at stake. On the record before us, it would be folly for the court to temporarily conduct and ultimately wind up the business without employing the present managerial and operating forces. The appointment of a receiver, therefore, would necessarily result principally in the friction and expense of superadded legal machinery.

The plaintiffs have recognized the existence of this condition. At the stockholders' meeting, March 16, 1925, at which it was voted not to renew, the plaintiffs voted for a resolution requiring the board of directors to "proceed immediately to the liquidation of the company's affairs in accordance with law, subject" to the limitation that, if differences should arise, any stockholder might resort to his legal or other remedy. The defendants voted for, and plaintiffs opposed, a resolution instructing the board to proceed with the liquidation "in such manner as in their judgment seems to be for the best interests of the stockholders." This was carried. The majority resolution would not authorize the directors to proceed in violation of law. It was the unanimous sentiment, therefore, that the directors, of whom plaintiff T. H. McCarthy was one, should be intrusted with the liquidation. The plaintiff T. H. McCarthy is the president, and has acted as the spokesman of the plaintiff M. H. McCarthy Company, which seems to be composed principally of the widow and daughters of M. H. McCarthy, deceased. At the directors' meeting, March 16, 1925, at which plaintiffs' counsel was present, plaintiff T. H. McCarthy moved the adoption of a resolution "that the board of directors proceed to the liquidation of the business of the corporation in accordance with the laws of Iowa, with a view to an early liquidation of the company's affairs, and that the officers are temporarily authorized to make such purchases, incur such indebtedness, and do such other things as are reasonably necessary to such temporary conduct of the business. Any act or acts other than the above shall be subject to the consideration and determination of the board of directors." This was unanimously adopted. T. H. McCarthy says that, at the board meeting on June 24, 1925, when the question of selling a number of yards came up, he did not suggest a program, but that his "attitude was that the active officers of the company were better informed

and in a better position to dictate the best policy with regard to selling yards.''

The charter expired January 8, 1925. No sale of any of the yards was effected prior to the filing of the petition, on September 2, 1925. The plaintiffs complain of lack of expedition. Owing to the depressed business conditions obtaining generally in the territory in which the defendant company was operating, and the resultant decrease in the sales, it had not declared a dividend in 1923 and 1924. The plaintiffs had, about July, 1924, made known to defendant officers their desire for a more dependable income and a change of investment, with the expiration of the charter. From November, 1924, to June, 1925, numerous communications took place, with a view of securing a sale of plaintiffs' interests or a re-organization or consolidation or a division in kind. For various reasons, not involving any evil motives or conduct on the part of the defendants, all efforts along these lines proved fruitless.

On June 24, 1925, plaintiff company wrote defendant Day a letter, stating that defendant company ''is engaged in one of the most stable and safest of merchandising businesses. * * * The company had a record of earnings of some $2,000,000 in the past twenty years. With the deflation and liquidation period of the farmer over, and nearly all farm products bringing prices above the average and the country generally in a prosperous condition we cannot bring ourselves to believe but that this business can be liquidated in a satisfactory manner within a reasonable period.''

A directors' meeting, at which the plaintiff T. H. McCarthy was present, was held that day, but no vote was taken. On July 8, 1925, the defendants offered the yards for sale, by means of letters and verbal communications, to many lumber companies. The record shows no lack of energy, comprehensiveness, or good faith in this campaign. On August 15, 1925, the St. Anthony & Dakota Elevator Company showed an interest in a group of yards. Negotiations began. The plaintiff T. H. McCarthy was advised of this fact before August 21st. A tentative offer of $100,000 for the group was made August 22, 1925, and shown to the plaintiff McCarthy, who said it was something for the board to act on. The price offered was unsatisfactory. The negotiations were continued, but no price ar-

rived at until September 4th, when an offer of $115,000 for the group was made, and by defendant officers accepted. Meantime, on September 2d, this petition was filed. The plaintiff T. H. McCarthy objected to the proposed contract because the yards had not been submitted to competitive bidding and the conditions were "onerous and unusual, in prohibiting the present company under its own or any other name to conduct the same or a similar business for a period of 10 years * *. *" The evidence is that $115,000 was a good price. It appears from the statements of counsel that, since the trial, the contract has been abandoned, and the same yards sold for $120,000. This was not before the lower court; but, if it had been, the development of the fact after the contract was made, and particularly under circumstances existing in this case, that an offer better by less than 5 per cent than that of the contract price might be obtained, detracts neither from the business capacity nor the integrity of defendant officers. On cross-examination, the defendant officers showed a disposition to adhere to the contract which they had made, notwithstanding the possibility of getting an increase in price. This is commendatory, rather than derogatory to them and their management. The contract was fairly entered into, and to repudiate it would be merely to invite the delay and expense of a lawsuit, and would be an unfavorable reflection upon the integrity of the company and its officers and on the security of the obligations which it was under, or would be likely thereafter to find it desirable to incur.

It is said that there were internal dissensions such as to prevent an amicable adjustment of the corporate affairs. Reference is made to a request in January, 1924, for an independent audit, and defendants claimed resentment thereof. The evidence is, as above set forth, that at that time plaintiffs assured defendants that they had the utmost confidence in the management. The claimed dissensions consisted principally in inability to agree upon a plan by which the minority interests might be settled for without a sale of the properties and termination of the business. The defendants are not to be condemned for a reasonable effort to solve their difficulties by other means than a sale of their properties in a time of depreciation. It is not shown that they consumed an unreasonable length of

time in endeavoring to arrive at an amicable solution that would be in the interest of all the stockholders. Plaintiffs urge that, after the expiration of the charter, defendants illegally purchased a competing yard. The evidence is that the purchase of this so-called "intruded" competing yard in a small town had been discussed with T. H. McCarthy by defendants, and that at the board meeting, March 16, 1925, T. H. McCarthy and his counsel took part in the discussion·regarding it; that no objection to its purchase was ever made, and formal action of the board meeting was not considered necessary.

Plaintiffs complain that the effect of the final decree permits the corporation to continue business illegally, and forces them to assume the liabilities thereof as partners.

Apparently, and we think correctly, the point is not made with reference to the denial of a receivership *pendente lite.* The rights of the parties on final hearing are not before us for adjudication. We do not find it necessary, at this stage of the case, to pass upon the extent to which the plaintiffs have consented to what has been done, nor the effect of such consent in the final determination of the case, nor on the question whether such consent has been withdrawn by the institution of the suit, nor the effect of the two years' lapse of time since the interlocutory application was presented, nor the effect of the purchase of the lumber yard and the plaintiffs' participation therein, as respects the rights and remedies of the parties on final hearing. We may not anticipate that the evidence on final hearing will be the same as that now before us. If the fact situation should be the same, still the questions of law would be different. We assume, merely for the purpose of this decision, that the form of remedy sought, if plaintiffs are entitled to relief, is the proper one. Whether the corporation, in continuing its business after the time expiration of its charter, is acting as such *de facto,* as was said under the facts before the court in *Elson v. Wright,* 134 Iowa 634 (compare *Ewald Iron Co. v. Commonwealth,* 140 Ky. 692 [131 S. W. 774]; *Bradley v. Reppell,* 133 Mo. 545 [32 S. W. 645, 34 S. W. 841, 54 Am. St. 685]; *Bonfils v. Hayes,* 70 Colo. 336 [201 Pac. 677]; 14a Corpus Juris 1099; 14 Corpus Juris 226; *Campbell v. Perth Amboy Mut. L., H. & B. Assn.,* 76 N. J. Eq. 347 [74 Atl. 144]), or whether, under the facts now before the court, the

plaintiffs may be held liable as partners (*Commercial Nat. Bank v Gilinsky,* 142 Iowa 178; *Central City Sav. Bank v. Walker,* 66 N. Y. 424; *National Union Bank v. Landon,* 45 N. Y. 410), it is unnecessary to determine. The question of plaintiffs' alleged liability, as related to this interlocutory application, is academic. Before the application may be granted, it must appear "that such property, or its rents or profits, are in danger of being lost or materially injured or impaired." The court must be "satisfied that the interests of one or both parties will be thereby promoted." Section 12713. This is also the general rule of equity. 34 Cyc. 21 *et seq.,* 80 *et seq.* A temporary receiver is appointed only to preserve the property and to protect the rights of all parties therein. A necessity therefor must be shown. 34 Cyc. 18, 46, 80. The court should proceed with great caution and exercise sound legal discretion. Idem 19, 21. The company's assets are ample to pay all debts and liabilities. The defendants have offered to sell their stock at par; but the plaintiffs asked $120 per share, evidently on the theory, in part at least, that too much has been set aside for depreciation. The audit of December 31, 1924, shows current assets $1,118,985.26, besides fixed assets $468,486.06, after allowing a depreciation reserve of $120,673.89. These, with other assets allowed by the auditors, make a total of $1,663,747.34, as against current liabilities, $193,791.14, and reserves of $47,397.72. The audit shows a surplus of $20,958.48. - A temporary injunction is asked only against the carrying out of the alleged improvident contract with the St. Anthony Company, not against continuing business. We hold, on this branch of the case, that the interlocutory applications were properly denied.

III. Plaintiffs have filed motion to strike defendants' additional abstract. Both sides have taken pains to present their respective contentions in record and argument with great thoroughness. The case is one of unusual importance. The motion is overruled. The costs in greater part have been made upon that branch of the case upon which defendants are successful. The costs will be taxed one fourth to defendants and three fourths to the plaintiffs. The decree as a finality, determining the suit on the merits, barring final hearing and dismissing the petition, is reversed. As an interlocutory order

3. APPEAL AND ERROR: abstracts of record: motion to strike.

denying the applications for appointment of a receiver and the issuance of a temporary injunction, it is affirmed.—*Affirmed in part; reversed in part.*

EVANS, C. J., and STEVENS, FAVILLE, DE GRAFF, ALBERT, KINDIG, and WAGNER, JJ., concur.