A. G. RICHARDSON, Appellee, v. W. J. RUSK et al., Appellants.

No. 41624.

DECEMBER 13, 1932.

Healey & Reynolds, for appellee.

Roscoe P. Thoma, for appellants.

DE GRAFF, J.—A preliminary matter is to be disposed of before a consideration of the merits of the case. Defendants-appellants move to strike plaintiff-appellee's amendment to abstract because it was not filed within the rule. The decree in this case was entered on the 12th day of November, 1931. A notice of appeal was served and filed on the 3d day of March, 1932, almost four months after the decree was entered. The appellant's abstract was filed June 20, 1932, 109 days after the notice of appeal was served. The

appellants filed an amendment to their abstract on June 24, 1932, and appellants' brief and argument were filed July 29, 1932. Appellee's amendment to the abstract was filed September 9, 1932, and appellee's brief and argument on September 16, 1932. The case has since been submitted.

We cite these dates for the purpose of showing that the appeal was not prosecuted by appellants with any great dispatch, and that no prejudice has resulted to the appellants from the failure of the appellee to file her amended abstract strictly within the time required by the rules.

The appellee's amendment to the abstract contains many things not included within the appellant's abstract which materially aid this court in a determination of the matters involved. Furthermore, it appears that the present firm of attorneys, Healey & Reynolds, who now represent the appellee, have not always been attorneys for appellee, but that the firm of Johnston & Reynolds represented the appellee, but upon the elevation of Mr. Johnston, a member of the firm, to the district bench, the present firm has succeeded to the firm of Johnston & Reynolds. It appears further, by affidavit attached to the appellee's resistance to the motion to strike, that Mr. Johnston, of the former firm, had full, active and complete charge of and conducted the entire trial of the said cause, and that Healey & Reynolds were not definitely employed by the appellee until about the 1st day of August, 1932. It further appears that the appellants' rights, whatever they may be, are fully protected by a bond in the sum of $2,000 in the court below. We believe that the explanation and excuses offered by counsel for appellee are sufficient to justify the delay, and therefore rule that the motion to strike on the grounds stated be denied. Collins v. Collins, 139 Iowa 703; First National Bank v. Eichmeier, 153 Iowa 154; Ford Paving Co. v. Elzy, 173 Iowa 38; McCarthy Co. v. Central Lumber Co., 204 Iowa 207; Ferguson v. Grand Lodge, 174 Iowa 61, l. c. 78.

We now turn our attention to the merits of the case. From the record submitted, it appears that the plaintiff-appellee was the holder of a first mortgage on certain property in Union County, belonging to one Goodman. It consisted of two lots in Creston, with an apartment building thereon. The plaintiff-appellee was likewise the owner of a judgment against E. Goodman, which was on file in the office of the clerk of the District Court of Union County, Iowa. One Ohlschlager was the holder of a second mortgage on said prop-

erty. Both mortgages were executed by Goodman and his wife. W. J. Rusk procured a judgment against E. Goodman which was transcripted and filed in the office of the clerk of the District Court of Union County, Iowa, on April 23, 1923, which date was subsequent to the execution of the two mortgages and subsequent to the entry of the judgment in favor of plaintiff-appellee.

The first mortgage came due and was unpaid, and the holder of the mortgage, plaintiff-appellee in this case, commenced an action to foreclose the same. Goodman attempted to prevent foreclosure but was unable to dissuade the plaintiff-appellee from continuing with her foreclosure action except by entering into an oral agreement with her, which he did, by the terms of which he surrendered possession of the premises to plaintiff-appellee, and plaintiff-appellee agreed to pay taxes, insurance and upkeep from the rents secured from said premises, and the remainder of said rents was to be divided pro rata between the plaintiff-appellee holder of the first mortgage, and Ohlschlager, the holder of the second mortgage.

Under this agreement, the plaintiff-appellee went into possession of the premises and collected the rents therefrom and applied them in accordance with the terms of the oral agreement. Goodman made some repairs and the income for about four months was applied to the payment of the cost of the repairs. That was in May, June, July and August of 1928. Thereafter, and until the 25th day of February, 1931, the plaintiff-appellee continued to collect rents and apply them as aforesaid, but on the 26th day of March, 1931, notice was served upon the tenants by the Iowa Loan & Trust Company of Fairfield, threatening to dispossess the tenants unless the rent for the premises was paid to it.

The Iowa Loan & Trust Company aforesaid claimed its rights in the premises under a written lease made with W. J. Rusk, who claimed to have a sheriff's deed to said property, issued to him by the sheriff of Union County on February 25, 1931, under an execution on the judgment secured by Rusk in the year 1923.

The plaintiff-appellee asserts that the sheriff's deed is a nullity and that the rights of the Iowa Loan & Trust Company by virtue of the lease from Rusk are nil and that she is entitled to injunctive relief to prevent Rusk and the Trust Company from interfering with her rights as a mortgagee in possession. A temporary injunction was issued by the court on August 31, 1931, and on the 12th day

of October, 1931, the defendants filed their substituted answer, in which much of the matters pleaded by the plaintiff-appellee is admitted. The execution of the agreement between plaintiff-appellee and Goodman is denied, or at least, it is claimed that the agreement was subject to the lien of the judgment held by Rusk and that the sheriff's sale cut off any rights of the plaintiff-appellee after the period of redemption had expired. Defendants-appellants admit the sale and aver that it was regular in all respects, and that the sheriff's deed executed thereunder conveyed the title to the defendant Rusk absolutely, subject only to the lien of the plaintiff's mortgage and judgment and any other valid recorded liens thereon. They admit the execution of the lease, the notification to the tenants and ask an accounting of rents from February 25, 1931.

We first consider the proposition advanced by the defendants-appellants that plaintiff-appellee was not a mortgagee in possession. In Boggs v. Douglass, 105 Iowa 344, we said:

"It is well settled under the authorities that the mortgagee can not maintain an action in ejectment against the mortgagor; but in some states it is held that, where the mortgagee obtains possession by any lawful means or enters therein with the assent of the mortgagor, without a definite time being fixed to continue therein, he may retain possession until his mortgage debt is paid. * * * (Citing cases.) But lawful possession, as against the true owner, can only be obtained by his consent, expressed or implied. Surely, the mortgagor may place the mortgagee in possession, and thereby avoid the expenses of foreclosure; and if in so doing, the duration of that possession is not limited, the intention that it continue until the debt is paid is the only reasonable, as it is the natural, inference to be drawn from the transaction. * * * (Citing cases.) The possession is not by virtue of the mortgage, however, but the agreement of the parties to it."

The record in the instant case discloses what we believe to be an "expressed intention," or an express contract or agreement to put the mortgagee in possession. The property was surrendered by Goodman to J. V. Richardson, plaintiff-appellee's son, as her agent; he has acted as his mother's agent since his father's death in 1911; he has always collected the rents for his mother, has paid taxes and the like with no complaint from Goodman; everything that has been done has been with Goodman's consent. We cannot see how

the evidence of putting plaintiff-appellee in possession, in the absence of a written agreement, could be more certain.

Defendants-appellants rely upon Whitley v. Barnett, 151 Iowa 487, as supporting their contention that, under these circumstances, the plaintiff-appellee was not a mortgagee in possession. The plaintiff-appellee relies upon the same case as an authority that she is a mortgagee in possession. In the Whitley case, supra, we held that the law relative to a mortgagee in possession did not apply for there was no evidence in the record that the person who was looking after the property was the agent of the mortgagee. It is further shown by the record in the instant case that Rusk or his counsel knew about the mortgagee's being in possession; for Rusk's Union County lawyer addressed a letter to Rusk's Jefferson County lawyer, under date of December 18, 1928, saying that the rents were being collected by Mrs. S. W. Richardson,—who is the same as A. G. Richardson, plaintiff-appellee.

The only other point for consideration is whether or not the deed executed by the sheriff is valid. Many reasons are assigned by the appellee as to why said sheriff's deed is invalid. It is not necessary, in the determination of this case, that we pass upon each reason assigned. The record shows, we think, by the greater weight of testimony, that an execution was issued on the judgment of the defendant-appellant Rusk on the 7th day of May, 1923. The sheriff levied said execution by garnishing the tenants, but was told by one of the attorneys for Rusk to hold the execution, which he did. No return was ever made of this execution by the sheriff. It was delivered by the sheriff to attorneys for Rusk without a return, and the attorneys filed the execution in the clerk's office and caused the clerk to make thereon a notation as follows: "Returned not satisfied. New execution issued November 9, 1928."

There is some conflict in the evidence as to when this first execution was delivered to the clerk. We are inclined to believe, under the evidence, that the record of the clerk, consisting of the filing date stamped on the execution, together with the other evidence in the case, requires us to say that while the second execution was issued on November 9, 1928, the first one did not find its way to the clerk's office until November 19, 1928. Regardless of this fact, we are of the opinion that the filing of the first execution in the clerk's office, with a notation thereon made by the clerk that it

was returned not satisfied, is not a compliance with the statute and does not constitute a return of the execution.

Another execution was issued on November 9th and sent to the sheriff, and a sale of the real estate in question made thereunder. Without passing upon all of the objections made to the manner of the levying of the execution and the making of this sale, we are constrained to hold that the sale made by the sheriff under the second execution was void as to the mortgagee in possession. The trial court determined that the evidence sustained the contention of the plaintiff-appellee that no return had been made of the first execution when the second one was issued, and we find abundant support in the testimony for such holding, and agree with the trial court that this fact issue must be resolved in favor of plaintiff-appellee. In Merritt v. Grover, 57 Iowa 493, we held:

"It is, however, said by counsel for the appellee the statute only applies where the first execution was in existence at the time the second issued, and that an execution is not in existence when the return day has passed. That to exist is 'to live, to have life or animation.' We incline to think this is so. But an execution has sufficient life to sustain a sale made after the return day, if the levy was made before. For some purposes then, an execution has an existence after the return day. If for any purpose, the statute applies. We, therefore, think an execution must be regarded as existing until it has been returned. Under the statute it is not material whether a levy had been made under the outstanding execution or not, or, if made, whether the property had been sold or not. While one execution is in existence another cannot issue. This is the rule. There may be exceptions, however, to such rule. The execution may have been lost or destroyed, but if so, a return of that fact could be made. But there may be cases where this could not be done. If so, we think it devolves on the plaintiff in execution, or the party claiming under the sale, if it is essential as to him to be shown, to allege and prove the facts which it is claimed avoid the statute."

On a retrial of the foregoing case, and in Merritt v. Grover, 61 Iowa 99, we said:

"It was held on the former appeal that the demurrer should have been sustained because of the existence of two executions. * * * It was held upon the former appeal that an execution is in

'existence' within the meaning of Section 3025 of the Code, 'until it has been returned.' The fact, as alleged in the answer, that it had been ordered returned, and that no levy had been made thereunder except upon the mare which was sold, does not meet the requirement of the statute. The defendant was the plaintiff in execution, and it was under his control, and it is not too much to require of him that he should have seen that it was returned before he ordered another. The statute appears to us to be mandatory. If we were to hold it to be directory, it would lead to many serious and embarrassing questions."

 It is claimed further that the return on the second execution was not in compliance with the law. The evidence in the case shows that the second execution was delivered to the sheriff of Union County, and an attempt was made to sell the property under the execution, but no return thereof was made on the execution. Notices were published, parties in possession were served, a bid was offered and a sale made, and no action was ever taken by anybody to set aside or annul any of the proceedings of the sheriff, and no return is made in connection with the execution disclosing any such facts. At a later date, one Thompson took the office of sheriff, succeeding the sheriff who made the original levy on the second execution. Thompson swears that he did not know how to make up a return on this execution; that frequently attorneys helped him make his returns; that the only thing that was done with respect to the return on this execution, was that one of the attorneys for the defendant Rusk made up a return after the sale, and the sheriff looked it over and signed it. The return of the sheriff is in narrative form and has the appearance of having been made after the sale. We are convinced that such was the case.

In Mullaney v. Cutting, 175 Iowa 547, which was an action to set aside the sale of real estate and a sheriff's deed, based on the ground of certain irregularities, we said:

"There is a further irregularity in relation to the levy. The fact of levy was not endorsed upon the execution by the sheriff until it was included in his final return after the sale. The act of the sheriff which is claimed to have constituted the levy was an entry in the encumbrance book. * * * Section 3965, Code 1897, requires all acts of the sheriff to be entered upon the execution at the time that the act is done. In a legal sense, there was no levy on

the real estate, and could be none until such fact was entered upon the execution. The result is that the sale was actually had before a legal levy was actually made."

We reaffirmed the decision in this case, in so far as this point is involved, in the case of Ebinger v. Wahrer, 213 Iowa 84, in which we said:

"It is next insisted that the levy was ineffectual because Section 11664, Code 1927, was not complied with. That section reads as follows: 'The officer to whom an execution is issued shall indorse thereon the day and hour when he received it, the levy, sale, or other act done by virtue thereof, with the date thereof, the dates and amounts of any receipts or payment in satisfaction thereof; which entries must be made at the time of the receipt or act done.' It is insisted herein that the notation on the execution of the levy by the sheriff was not made until after the sale. Entry on the incumbrance book in the clerk's office was not sufficient, and this statute is not directory, but mandatory."

In Drake v. Brickner, 180 Iowa 1166, which was an action to set aside a sheriff's sale and enjoin the execution of a sheriff's deed, after quoting Section 3965 of the Code of 1897, we said:

"In a legal sense, there can be no levy on real estate until the fact thereof is entered upon the execution. The making of required entries upon the incumbrance book is not sufficient. * * * The full return on the execution was offered in evidence, from which it appears that the date and hour when received by the sheriff were made a part thereof. The return, in language and form, has the appearance of being a continuous, narrative statement of the proceedings under execution, and of having probably been made after the sale. The deputy sheriff to whom the execution was delivered and who conducted the sale was not called as a witness; hence, the only direct testimony bearing upon the question is that of the clerk. It is by no means certain that the entries, without which the levy was invalid, were made upon the execution as required by Section 3965."

If we are to stand by our former decisions relative to the matters here under consideration, and we see no reason to depart there-

from, we must hold that under the record presented the decree of the trial court is right, and it is—Affirmed.

All the justices concur.